FILED

2016 JUN -8 PM 3:37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury **CR16-0390**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 16-<br>) |
| Plaintiff, | ) I N D I C T M E N T<br>) |
| v. | ) [18 U.S.C. § 1962(d): Racketeer<br>) Influenced and Corrupt |
| JOSE LOZA,<br>  aka "Cartune,"<br>  aka "Pumpkin Head,"<br>  aka "Pumpkin,"<br>  aka "P,"<br>  aka "JC,"<br>  aka "Gordy,"<br>  aka "Joseph,"<br>  aka "Big Head,"<br>  aka "C,"<br>  aka "Joey,"<br>DAVID GAITAN,<br>  aka "Thumper,"<br>  aka "Copperpot,"<br>LEONARDO ANTOLIN,<br>  aka "Rowdy,"<br>  aka "Rowdy Boy,"<br>SYLVIA OLIVAS,<br>CHRISTY ARIZMENDI,<br>  aka "Christy Gonzalez,"<br>FRANKIE VASQUEZ,<br>  aka "Kreeper,"<br>  aka "Kreeps,"<br>  aka "Wicked,"<br>JESSE HERNANDEZ, SR.,<br>  aka "Lil Man,"<br>  aka "Pony,"<br>  aka "Lil Hooligan,"<br>ANDY ALVAREZ,<br>  aka "Night Owl," | ) Organizations Conspiracy;<br>) 18 U.S.C. §§ 1959(a)(1), (a)(3),<br>) (a)(5), (a)(6): Violent Crime in<br>) Aid of Racketeering;  21 U.S.C.<br>) § 846: Conspiracy to Possess<br>) with Intent to Distribute and<br>) Distribute Controlled<br>) Substances; 21 U.S.C.<br>) §§ 841(a)(1), (b)(1)(A),<br>) (b)(1)(B), (b)(1)(C): Possession<br>) with Intent to Distribute and<br>) Distribution of Controlled<br>) Substances; 18 U.S.C.<br>) §§ 924(c)(1)(A), (j)(1):<br>) Possess, Use, Carry, Brandish,<br>) and/or Discharge a Firearm in<br>) Furtherance of, and During and<br>) in Relation to, a Crime of<br>) Violence or Drug Trafficking<br>) Crime; 18 U.S.C. § 922(g)(1):<br>) Felon in Possession of a<br>) Firearm/Ammunition; 18 U.S.C.<br>) § 922(g)(5): Alien in<br>) Possession of a Firearm and<br>) Ammunition; 18 U.S.C. § 1956(h):<br>) Conspiracy to Launder Money; 18<br>) U.S.C. § 2(a): Aiding and<br>) Abetting; 18 U.S.C. §§ 924(d),<br>) 963, 982(a)(1), 1963, 21 U.S.C.<br>) § 853, 26 U.S.C. § 5872, and 28 |

CAC: OCDETF

| | | |
|---|---|---|
| 1 | IAN CASILLAS, | )      U.S.C. § 2461(c): Criminal |
| |   aka "Natural," | )   Forfeiture] |
| 2 |   aka "Nat," | ) |
| | DONALD GOULET, | ) |
| 3 |   aka "Wacky," | ) |
| | ALFREDO GONZALEZ, | ) |
| 4 |   aka "Gunner," | ) |
| | ALEXIS JAIMEZ, | ) |
| 5 |   aka "Lil Travieso," | ) |
| |   aka "Lex," | ) |
| 6 | BRANDON ESPINOZA, | ) |
| |   aka "Downer," | ) |
| 7 | RONALD SOTELLO, | ) |
| |   aka "Downer," | ) |
| 8 | PETER OROZCO, | ) |
| |   aka "Chavo," | ) |
| 9 | JOSEPH VIRAMONTES, | ) |
| |   aka "Bullet," | ) |
| 10 |   aka "Jo Jo," | ) |
| | RAUL RUBIO, | ) |
| 11 |   aka "Largo," | ) |
| |   aka "Large," | ) |
| 12 | AARON SALINAS, | ) |
| | HENRY MENDOZA, | ) |
| 13 |   aka "Spanky," | ) |
| |   aka "Spanks," | ) |
| 14 |   aka "Hank," | ) |
| | RENE PANTALEON, | ) |
| 15 |   aka "Conejo," | ) |
| |   aka "Rabbit," | ) |
| 16 | DENISE CONTRERAS, | ) |
| | CHRISTIAN BOWERS, | ) |
| 17 |   aka "Gato," | ) |
| |   aka "Cat," | ) |
| 18 |   aka "Christian Espinoza," | ) |
| | MONICA RODRIGUEZ, | ) |
| 19 |   aka "Smiley," | ) |
| |   aka "Monica Gonzalez," | ) |
| 20 | JAIME VILLALBA, | ) |
| |   aka "Puppet," | ) |
| 21 | STEVEN JAIMEZ, | ) |
| |   aka "Flea," | ) |
| 22 | EMANUEL HIGUERA, | ) |
| |   aka "Blanco," | ) |
| 23 | EDWARD PANIAGUA, | ) |
| |   aka "Oso," | ) |
| 24 |   aka "Bear," | ) |
| | RIGOBERTO CONTRERAS, | ) |
| 25 |   aka "Rigo," | ) |
| | SAMUEL CABRERA, | ) |
| 26 | STEVEN DE LA PAZ, | ) |
| |   aka "Smokes," | ) |
| 27 |   aka "Smokey," | ) |
| | | ) |
| 28 | | ) |

DEREK VANDOREN,                          )
   aka "Ness,"                           )
   aka "Necio,"                          )
   aka "Derek Van Doren,"                )
   aka "Lickalotpuss,"                   )
ANTHONY MORALES,                         )
   aka "Cartoon,"                        )
   aka "Toons,"                          )
   aka "Rest,"                           )
FERNANDO HOLGUIN,                        )
   aka "Farmer,"                         )
ENRIQUE HOLGUIN,                         )
   aka "Boxer,"                          )
   aka "Rick,"                           )
FRANK MARTINEZ,                          )
   aka "Stranger,"                       )
   aka "Frank Burrola,"                  )
   aka "Frank Martinez                   )
          Segovia,"                      )
NICOLE MURIETTA,                         )
   aka "Happy,"                          )
   aka "Pig,"                            )
ANGELIC GAITAN,                          )
MICHAEL JAIMEZ,                          )
   aka "Travieso,"                       )
   aka "Travi,"                          )
MICHAEL SALINAS,                         )
   aka "Smiley,"                         )
RICKY PEREZ,                             )
   aka "Wicked,"                         )
LUIS MORENO,                             )
   aka "Oser,"                           )
JUAN NILA,                               )
   aka "Topo,"                           )
ROY GAVALDON, SR.,                       )
   aka "Spider Roy,"                     )
DANIEL GALLARDO,                         )
   aka "Kraze,"                          )
   aka "Craze,"                          )
JUAN PIZANO,                             )
   aka "Drifter,"                        )
MANUEL ALATORRE MARTINEZ,                )
   aka "Malo,"                           )
   aka "Manuel Alatorre,"                )
   aka "Manuel Martinez,"                )
DERIK GONZALES,                          )
   aka "Jo Jo,"                          )
   aka "Shaggy,"                         )
   aka "Derik Gonzalez,"                 )
NICHOLAS JAIMEZ,                         )
   aka "Littles,"                        )
   aka "Lils,"                           )
ROY GAVALDON, JR.,                       )
GABRIEL FELIX, and                       )
                                         )

1   CHRISTINA FRANCO,                )
                                     )
2                   Defendants.      )
                                     )
3                                    )
                                     )
4

TABLE OF CONTENTS

GENERAL ALLEGATIONS:

    A.   THE RACKETEERING ENTERPRISE .........................1

    B.   BACKGROUND OF THE RACKETEERING ENTERPRISE ..........3

    C.   PURPOSES OF THE ENTERPRISE..........................8

    D.   THE MEANS AND METHODS OF THE ENTERPRISE..............9

COUNT ONE (18 U.S.C. § 1962)..................................11

COUNTS TWO through NINE (18 U.S.C. § 1959)....................95

COUNT TEN (21 U.S.C. § 846)..................................104

COUNTS ELEVEN through TWENTY-ONE (21 U.S.C. § 841)...........109

COUNTS TWENTY-TWO through TWENTY-EIGHT (18 U.S.C. § 924).....120

COUNTS TWENTY-NINE through THIRTY-FOUR (18 U.S.C. § 922).....127

COUNT THIRTY-FIVE (18 U.S.C. § 1956)........................136

FORFEITURE ALLEGATION ONE ..................................139

FORFEITURE ALLEGATION TWO...................................141

FORFEITURE ALLEGATION THREE.................................143

FORFEITURE ALLEGATION FOUR..................................145

1   The Grand Jury charges:

2                    GENERAL ALLEGATIONS

3   A.   THE RACKETEERING ENTERPRISE

4       1.   At all times relevant to this Indictment, defendants

5   JOSE LOZA, also known as ("aka") "Cartune," aka "Pumpkin Head,"

6   aka "Pumpkin," aka "P," aka "JC," aka "Gordy," aka "Joseph," aka

7   "Big Head," aka "C," aka "Joey" ("LOZA"), DAVID GAITAN, aka

8   "Thumper," aka "Copperpot" ("GAITAN"), LEONARDO ANTOLIN, aka

9   "Rowdy," aka "Rowdy Boy" ("ANTOLIN"), SYLVIA OLIVAS ("OLIVAS"),

10  CHRISTY ARIZMENDI, aka "Christy Gonzalez" ("ARIZMENDI"), FRANKIE

11  VASQUEZ, aka "Kreeper," aka "Kreeps," aka "Wicked" ("VASQUEZ"),

12  JESSE HERNANDEZ, SR., aka "Lil Man," aka "Pony," aka "Lil

13  Hooligan" ("HERNANDEZ"), ANDY ALVAREZ, aka "Night Owl"

14  ("ALVAREZ"), IAN CASILLAS, aka "Natural," aka "Nat"

15  ("CASILLAS"), DONALD GOULET, aka "Wacky" ("GOULET"), ALFREDO

16  GONZALEZ, aka "Gunner" ("A. GONZALEZ"), ALEXIS JAIMEZ, aka "Lil

17  Travieso," aka "Lex" ("A. JAIMEZ"), BRANDON ESPINOZA, aka

18  "Downer" ("ESPINOZA"), RONALD SOTELLO, aka "Downer" ("SOTELLO"),

19  PETER OROZCO, aka "Chavo" ("OROZCO"), JOSEPH VIRAMONTES, aka

20  "Bullet," aka "Jo Jo" ("VIRAMONTES"), RAUL RUBIO, aka "Largo,"

21  aka "Large" ("RUBIO"), AARON SALINAS ("A. SALINAS"), HENRY

22  MENDOZA, aka "Spanky," aka "Spanks," aka "Hank" ("MENDOZA"),

23  RENE PANTALEON, aka "Conejo," aka "Rabbit" ("PANTALEON"), DENISE

24  CONTRERAS ("D. CONTRERAS"), CHRISTIAN BOWERS, aka "Gato," aka

25  "Cat," aka "Christian Espinoza" ("BOWERS"), MONICA RODRIGUEZ,

26  aka "Smiley," aka "Monica Gonzalez" ("RODRIGUEZ"), JAIME

27  VILLALBA, aka "Puppet" ("VILLALBA"), STEVEN JAIMEZ, aka "Flea"

28  ("S. JAIMEZ"), EMANUEL HIGUERA, aka "Blanco" ("HIGUERA"), EDWARD

1 | PANIAGUA, aka "Oso," aka "Bear" ("PANIAGUA"), RIGOBERTO
2 | CONTRERAS, aka "Rigo" ("R. CONTRERAS"), SAMUEL CABRERA
3 | ("CABRERA"), STEVEN DE LA PAZ, aka "Smokes," aka "Smokey" ("DE
4 | LA PAZ"), DEREK VANDOREN, aka "Ness," aka "Necio," aka "Derek
5 | Van Doren," aka "Lickalotpuss" ("VANDOREN"), ANTHONY MORALES,
6 | aka "Cartoon," aka "Toons," aka "Rest" ("MORALES"), FERNANDO
7 | HOLGUIN, aka "Farmer" ("F. HOLGUIN"), ENRIQUE HOLGUIN, aka
8 | "Boxer," aka "Rick" ("E. HOLGUIN"), FRANK MARTINEZ, aka
9 | "Stranger," aka "Frank Burrola," aka "Frank Martinez Segovia"
10 | ("MARTINEZ"), NICOLE MURIETTA, aka "Happy," aka "Pig"
11 | ("MURIETTA"), ANGELIC GAITAN ("A. GAITAN"), MICHAEL JAIMEZ, aka
12 | "Travieso," aka "Travi" ("M. JAIMEZ"), MICHAEL SALINAS, aka
13 | "Smiley" ("M. SALINAS"), RICKY PEREZ, aka "Wicked" ("PEREZ"),
14 | LUIS MORENO, aka "Oser" ("MORENO"), JUAN NILA, aka "Topo"
15 | ("NILA"), ROY GAVALDON, SR., aka "Spider Roy" ("GAVALDON, SR."),
16 | DANIEL GALLARDO, aka "Kraze," aka "Craze" ("GALLARDO"), JUAN
17 | PIZANO, aka "Drifter" ("PIZANO"), MANUEL ALATORRE MARTINEZ, aka
18 | "Malo," aka "Manuel Alatorre," aka "Manuel Martinez"
19 | ("ALATORRE"), DERIK GONZALES, aka "Jo Jo," aka "Shaggy," aka
20 | "Derik Gonzalez" ("D. GONZALES"), NICHOLAS JAIMEZ, aka
21 | "Littles," aka "Lils" ("N. JAIMEZ"), ROY GAVALDON, JR.
22 | ("GAVALDON, JR."), GABRIEL FELIX ("FELIX"), and CHRISTINA FRANCO
23 | ("FRANCO") (collectively, the "defendants"), and others known
24 | and unknown to the Grand Jury, were members and associates of a
25 | criminal organization engaged in, among other things, a
26 | conspiracy to traffic in narcotics, narcotics trafficking, money
27 | laundering, identity theft, access device fraud, and the
28 | commission of crimes of violence, including conspiracy to commit

1  murder, murder, attempted murder, assault, extortion, and

2  robbery.  At all relevant times, this organization, hereinafter

3  referred to as the Canta Ranas Organization, operates in the

4  Central District of California and elsewhere.  The Canta Ranas

5  Organization, including its leaders, members, and associates,

6  constitutes an "enterprise," as defined by Title 18, United

7  States Code, Section 1961(4), that is, a group of individuals

8  associated in fact, although not a legal entity, which is

9  engaged in, and the activities of which affect, interstate

10  commerce.  The enterprise constitutes an ongoing organization

11  whose members function as a continuing unit for a common purpose

12  of achieving the objectives of the enterprise.

13  B.   BACKGROUND OF THE RACKETEERING ENTERPRISE

14       2.   The Mexican Mafia, often referred to as "La EME"

15  (derived from the Spanish pronunciation of the letter "M"), is a

16  criminal organization that operates from within the California

17  state prison system, the federal prison system, the streets and

18  suburbs of large cities throughout Southern California, and

19  elsewhere.  Members of the Mexican Mafia, commonly referred to

20  as a "Carnal," "Brother," "Big Homie," "Tio" (Spanish for

21  "uncle"), and/or "Padrino" (Spanish for "godfather"), typically

22  come from the ranks of local Southern California Hispanic street

23  gangs, including the Canta Ranas gang.  By controlling the

24  criminal activities occurring within prison facilities,

25  providing protection for imprisoned members and associates of

26  Hispanic gangs, and imposing discipline, often in the form of

27  acts of violence, against both individuals and street gangs who

28  fail to adhere to its directives, the Mexican Mafia has risen to

the position where it now exercises control over Hispanic street gangs operating throughout the State of California. Specifically, its individual members control one or more Hispanic street gangs, which serve as the power base through which the Mexican Mafia members operate their individual criminal enterprises.

3. Mexican Mafia member D.G. ("Mexican Mafia D.G."), who is incarcerated in state prison, is the leader of the Canta Ranas Organization and has run this criminal enterprise since approximately the late 1980s. The Canta Ranas Organization's core membership consists of members and associates of the Canta Ranas street gang ("CR gang"), but its membership also extends to communities throughout California, including Riverside, Sacramento, and Stockton, that have gangs loyal to Mexican Mafia D.G. Mexican Mafia D.G. runs the Canta Ranas Organization with the assistance of intermediaries, who facilitate his receipt of "rent" payments from the Canta Ranas Organization's members, and communicate or assist in the communication of Mexican Mafia D.G.'s directives to the Canta Ranas Organization.

4. The Canta Ranas Organization's street-based operations are controlled principally by a senior member who is known as the "keyholder" or "shotcaller." The shotcaller's authority is derived from Mexican Mafia D.G., who appoints this individual. The shotcaller is responsible for ensuring that the goals of the Canta Ranas Organization are met, which include enforcing Mexican Mafia D.G.'s directives, enforcing the Canta Ranas Organization's code of conduct, and generating revenue through the commission of crimes, including narcotics trafficking in

Canta Ranas Organization territory and taxing (i.e., extorting a portion of illicit proceeds, typically drug proceeds) those who engage in illegal conduct within Canta Ranas Organization territory. Defendant LOZA, a Canta Ranas gang member, is the current Canta Ranas Organization shotcaller. With the support and sponsorship of Mexican Mafia D.G., defendant LOZA became a Mexican Mafia member sometime in 2014 or 2015.

5. The Canta Ranas gang is a multi-generational criminal street gang founded in Santa Fe Springs, California, in the late 1940's to early 1950's. In English, the name "Canta Ranas" means "Singing Frogs" and the gang adopted Canta Ranas as its name because the neighborhood in which it was founded was a flood ranch that had frogs that would croak following heavy rains, as if they were singing.

6. The Canta Ranas gang currently has approximately 140 active members, with three separate cliques: the Seekers, Kingsmen, and Viejos. The territory claimed by the Kingsmen and Viejos cliques of the Canta Ranas gang is as follows: Telegraph Road to the South, the San Gabriel River Bed to the West, Norwalk Boulevard to the East, and Los Nietos Road to the North. The territory claimed by the Seekers clique is as follows: Pioneer Boulevard to the East, Slauson Avenue to the South, Washington Boulevard to the North and the San Gabriel River Bed to the West. Each clique is loyal to Mexican Mafia D.G., and part of, the Canta Ranas Organization.

7. The Canta Ranas Organization maintains control of its territories by intimidating and threatening residents who live in the communities, by controlling the illegal conduct occurring

within its territories, by attacking and threatening rival gang members who encroach on Canta Ranas Organization territory, and by the use of symbolism, such as "tagging," (e.g., gang graffiti, such as "CR," "CRV," "CRV13," "CRVR", pictures of frogs/musical notes), gang signs (e.g., curling the index finger and thumb towards each other to form a "C," then curling the middle finger downward past the thumb to form an "R,", using the call "ribbit"), and gang paraphernalia (e.g., clothing and hats of the Colorado Rockies baseball team displaying CR, the San Francisco Giants baseball team or San Francisco 49ers football team displaying SF, tattoos containing the letters "CR," the words "Canta Ranas," and/or images of frogs or musical notes). CR gang members and associates also often "brand" their criminal acts by, for example, shouting references to "CR" so that the individual member or associate, and the broader organization, receives credit for having committed the crime.

8. Canta Ranas Organization members and associates typically are required to participate in criminal acts committed on behalf of, and in furtherance of, the Canta Ranas Organization. Such crimes include, but are not limited to, murder, attempted murder, assault, robbery, kidnaping, carjacking, extortion, witness intimidation, narcotics trafficking, access device fraud, credit card fraud, and identity theft. The commission of these crimes and/or the participation in non-criminal Canta Ranas Organization-directed activities, such as protecting the neighborhood, often is referred to as "putting in work." Those members and associates who "put in work" are able to maintain and increase their

standing within the Canta Ranas Organization.  This is particularly true when acts of violence are committed at the direction, and on behalf, of the Canta Ranas Organization.

9.    To support its criminal operations and bolster its reputation for violence and intimidation, the Canta Ranas Organization maintains a ready supply of firearms, including handguns, shotguns, rifles, and assault weapons.  Such weapons are frequently stolen, altered, or unregistered to make it more difficult to connect them to the individual who either used or obtained the weapon.  The Canta Ranas Organization also regularly sells weapons for profit, using the proceeds from such sales to purchase narcotics and additional firearms, which ensures that it always has a ready supply of firearms at its disposal.

10.    The Canta Ranas Organization generates revenue primarily by controlling the drug trafficking occurring within its territory.  Both members and approved drug dealers may distribute drugs, primarily methamphetamine and heroin, within Canta Ranas Organization territory with protection from rivals and without other interference.  In return, these individuals pay to the Canta Ranas Organization a percentage of the drug proceeds generated, known as a "tax."  The Canta Ranas Organization further taxes those who engage in other types of illegal conduct within its territory.  Those who refuse to pay the Canta Ranas Organization-mandated tax are subject to reprisals, including fines, robbery, kidnapping, and threatened or actual violence.

11. The Canta Ranas Organization, through its members and associates, takes steps to conceal and disguise its criminal activities from law enforcement, including the proceeds generated from its illegal conduct. For example, members and associates of the Canta Ranas Organization regularly used coded language to disguise the content of telephone communications relating to illegal conduct and frequently converted narcotics proceeds into money orders, which are used for numerous purposes, including, but not limited to: (a) transferring funds to Mexican Mafia D.G. and others known and unknown to the Grand Jury; (b) using money orders to advance the enterprise's financial interests; and (c) using money orders to conceal the nature and origin of narcotics and extortion proceeds generated by the enterprise.

12. Individuals who impede the Canta Ranas Organization's efforts to generate revenue, including the collection of taxes imposed on drug traffickers, or who otherwise disregard its directives, are subject to discipline and/or retribution from the Canta Ranas Organization, which can include monetary fines, threats, and acts of violence.

C. PURPOSES OF THE ENTERPRISE

13. The purposes of the Canta Ranas Organization include, but are not limited to, the following:

a. Enriching members and associates of the Canta Ranas Organization, including Mexican Mafia D.G. (and at his direction, others including his family members and associates), through, among other things, the distribution of narcotics, the collection of taxes from narcotics traffickers and others who

1  commit crimes in Canta Ranas Organization territory, and the

2  commission of financially-oriented crimes such as identity

3  theft, credit card fraud, burglary, and robbery.

4         b.   Maintaining control and authority over the Canta

5  Ranas Organization's territory, often through threats,

6  intimidation, and the commission of acts of violence against

7  local residents and rival gangs.

8         c.   Preserving, protecting, and expanding the power

9  of the Canta Ranas Organization through the use of intimidation,

10  violence, threats of violence, assaults, and murders.

11         d.   Promoting and enhancing the reputations and

12  activities of the Canta Ranas Organization and its members and

13  associates.

14  D.   THE MEANS AND METHODS OF THE ENTERPRISE

15         14.   The means and methods by which the defendants and

16  other members and associates of the Canta Ranas Organization

17  conduct and participate in the conduct of the affairs of the

18  enterprise include:

19         a.   Leaders of the Canta Ranas Organization

20  disseminate rules and orders to be followed by all participants

21  in the Canta Ranas Organization criminal enterprise.

22         b.   Members and associates of the Canta Ranas

23  Organization commit, attempt to commit, and threaten to commit,

24  acts of violence, including murders, assaults, acts of

25  intimidation, threats of violence directed against rival gang

26  members and witnesses in criminal cases, to protect and expand

27  the scope of the enterprise's criminal operations and to promote

28  a climate of fear and intimidation.

1          c.    Members and associates of the Canta Ranas

2  Organization engage in narcotics trafficking, firearms

3  trafficking, robbery, identity theft, access device fraud, and

4  "tax" collection as a means to generate income.

5          d.    Members and associates of the Canta Ranas

6  Organization pay "taxes" or "donations" to the Mexican Mafia to

7  ensure protection for its incarcerated members and associates,

8  and to obtain continued authorization to exercise exclusive

9  control over the Canta Ranas Organization's territory and the

10  criminal conduct occurring therein.

11         e.    Members and associates of the Canta Ranas

12  Organization attempt to conceal from law enforcement the

13  identity of its members and associates, the ways in which it

14  conducts its affairs, and the locations where its members and

15  associates discuss and conduct its affairs.

COUNT ONE

[18 U.S.C. § 1962(d)]

Paragraphs 1 through 14 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A.   OBJECT OF THE RICO CONSPIRACY

Beginning on a date unknown and continuing to on or about June 8, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants LOZA, GAITAN, ANTOLIN, OLIVAS, ARIZMENDI, VASQUEZ, HERNANDEZ, ALVAREZ, CASILLAS, GOULET, A. GONZALEZ, A. JAIMEZ, ESPINOZA, SOTELLO, OROZCO, VIRAMONTES, RUBIO, A. SALINAS, MENDOZA, PANTALEON, D. CONTRERAS, BOWERS, RODRIGUEZ, VILLALBA, S. JAIMEZ, HIGUERA, PANIAGUA, R. CONTRERAS, CABRERA, DE LA PAZ, VANDOREN, MORALES, F. HOLGUIN, E. HOLGUIN, MARTINEZ, MURIETTA, A. GAITAN, M. JAIMEZ, M. SALINAS, PEREZ, MORENO, NILA, GAVALDON, SR., GALLARDO, PIZANO, ALATORRE, D. GONZALES, N. JAIMEZ, GAVALDON, JR., FELIX, and FRANCO, and others known and unknown to the Grand Jury, being persons employed by and associated with the Canta Ranas Organization, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts indictable under the following provisions of federal law:

1    1.    Title 18, United States Code, Section 1956 (Money

2  Laundering);

3    2.    Title 18, United States Code, Section 1028 (Identity

4  Theft);

5    3.    Title 18, United States Code, Section 1029 (Access

6  Device Fraud);

7  and multiple acts involving:

8    4.    the distribution of, possession with intent to

9  distribute, and conspiracy to distribute and/or possess with

10  intent to distribute, controlled substances, in violation of

11  Title 21, United State Code, Sections 841(a)(1) and 846;

12    5.    robbery, in violation of California Penal Code

13  Sections 21a, 31, 182, 211, 212.5(a), 213, and 664;

14    6.    murder, in violation of California Penal Code Sections

15  21a, 31, 182, 187, 189, 190, and 664; and

16    7.    extortion, in violation of California Penal Code

17  Sections 21(a), 31, 182, 518, 519, 520, and 664.

18    It was a further part of the conspiracy that each defendant

19  agreed that a conspirator would commit at least two acts of

20  racketeering in the conduct of the affairs of the enterprise.

21  B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

22     ACCOMPLISHED

23    The object of the conspiracy was to be accomplished in

24  substance as follows:

25    1.    Mexican Mafia D.G., from within the California state

26  prison system, would pass messages to defendants OLIVAS,

27  RODRIGUEZ, and ARIZMENDI, and others known and unknown to the

28  Grand Jury, instructing Canta Ranas Organization leaders,

including defendant LOZA, to direct certain activities of the Canta Ranas Organization, including activities involving the distribution of controlled substances and the collection and distribution of taxes collected from those engaged in illegal activities, and to authorize and to direct acts of violence committed by members and associates of the Canta Ranas Organization.

2.    Mexican Mafia D.G., from within the California state prison system, would grant leadership authority over the Canta Ranas Organization to defendant LOZA, and others known and unknown to the Grand Jury.

3.    Mexican Mafia D.G., assisted by defendants LOZA and GAITAN, and others known and unknown to the Grand Jury, would authorize Canta Ranas Organization members and associates to extort and collect "taxes" from narcotics traffickers and others in the areas controlled by the Canta Ranas Organization.

4.    Mexican Mafia D.G. and defendants LOZA and GAITAN, and others known and unknown to the Grand Jury, would direct Canta Ranas Organization members and associates to commit crimes, including robberies, murders, extortion, and narcotics trafficking, to promote and further the activities of the Canta Ranas Organization.

5.    Defendants LOZA, GAITAN, ANTOLIN, VASQUEZ, HERNANDEZ, ALVAREZ, CASILLAS, GOULET, A. GONZALEZ, SOTELLO, VIRAMONTES, A. SALINAS, MENDOZA, VILLALBA, HIGUERA, PANIAGUA, DE LA PAZ, MORALES, MARTINEZ, A. GAITAN, M. JAIMEZ, M. SALINAS, PEREZ, MORENO, NILA, GALLARDO, ALATORRE, D. GONZALES, FELIX, and FRANCO, others known and unknown to the Grand Jury, would

13

1    obtain, possess, and/or store firearms, firearms accessories,
2    and ammunition for Canta Ranas Organization members and
3    associates, so that they could be used to commit crimes of
4    violence, to enforce the authority of the Canta Ranas
5    Organization, and/or to protect against rival gangs.
6        6.   Defendants LOZA, GAITAN, ARIZMENDI, VASQUEZ,
7    HERNANDEZ, CASILLAS, A. SALINAS, RUBIO, D. CONTRERAS, CABRERA,
8    MARTINEZ, MURIETTA, and A. GAITAN, and others known and unknown
9    to the Grand Jury, would provide controlled substances to Canta
10   Ranas Organization members and associates for further
11   distribution within Canta Ranas Organization territory.
12       7.   Defendants LOZA, GAITAN, ANTOLIN, ARIZMENDI, VASQUEZ,
13   HERNANDEZ, CASILLAS, GOULET, SOTELLO, RUBIO, A. SALINAS,
14   MENDOZA, D. CONTRERAS, BOWERS, HIGUERA, PANIAGUA, R. CONTRERAS,
15   CABRERA, DE LA PAZ, VANDOREN, MORALES, F. HOLGUIN, E. HOLGUIN,
16   MARTINEZ, MURIETTA, A. GAITAN, MORENO, NILA, PIZANO, and D.
17   GONZALES, and others known and unknown to the Grand Jury, would
18   possess and distribute controlled substances in the
19   neighborhoods controlled by the Canta Ranas Organization.
20       8.   Defendants GAITAN, A. SALINAS, S. JAIMEZ, M. JAIMEZ,
21   and M. SALINAS, would smuggle or otherwise cause controlled
22   substances to be smuggled into the incarceration system for
23   distribution to Canta Ranas Organization members and other
24   inmates.
25       9.   Mexican Mafia D.G. and defendants LOZA, GAITAN,
26   ANTOLIN, OLIVAS, ARIZMENDI, HERNANDEZ, ALVAREZ, CASILLAS,
27   GOULET, A. GONZALEZ, A. JAIMEZ, BOWERS, RODRIGUEZ, S. JAIMEZ,
28   R. CONTRERAS, MORALES, MURIETTA, A. GAITAN, GAVALDON, SR., M.

1    JAIMEZ, N. JAIMEZ, and FELIX, and others known and unknown to

2    the Grand Jury, would collect "tax" payments from narcotics

3    traffickers and others in the neighborhoods controlled by the

4    Canta Ranas Organization, and defendants M. JAIMEZ and M.

5    SALINAS would collect such payments within the incarceration

6    system, all on behalf of Mexican Mafia D.G.

7         10.   Defendants LOZA, GAITAN, OLIVAS, ARIZMENDI, VASQUEZ,

8    HERNANDEZ, OROZCO, RODRIGUEZ, F. HOLGUIN, MARTINEZ, MURIETTA,

9    and FELIX, and others known and unknown to the Grand Jury, would

10   deliver payment of the collected taxes to Mexican Mafia D.G. as

11   tribute owed by the Canta Ranas Organization to Mexican Mafia

12   D.G. and to obtain and maintain the protection, favor, and

13   backing of Mexican Mafia D.G., including through the depositing

14   of money into Mexican Mafia D.G.'s prison account and the

15   mailing of money orders and cashier's checks to Mexican Mafia

16   D.G. at Pelican Bay State Prison.

17        11.   Defendants LOZA, ANTOLIN, VASQUEZ, GOULET, A.

18   GONZALEZ, SOTELLO, VIRAMONTES, and PANIAGUA, and others known

19   and unknown to the Grand Jury, would use firearms and dangerous

20   weapons to commit robberies and assaults, and to retaliate

21   against, attempt to kill, and kill gang members and others who

22   obstructed the purposes of the Mexican Mafia, the Canta Ranas

23   Organization, as well as potential witnesses to criminal

24   activities committed by Canta Ranas Organization members and

25   residents in the neighborhoods controlled by the Canta Ranas

26   Organization, to enforce the authority of the Canta Ranas

27   Organization.

28

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants LOZA, GAITAN, ANTOLIN, OLIVAS, ARIZMENDI, VASQUEZ, HERNANDEZ, ALVAREZ, CASILLAS, GOULET, A. GONZALEZ, A. JAIMEZ, ESPINOZA, SOTELLO, OROZCO, VIRAMONTES, RUBIO, A. SALINAS, MENDOZA, PANTALEON, D. CONTRERAS, BOWERS, RODRIGUEZ, VILLALBA, S. JAIMEZ, HIGUERA, PANIAGUA, R. CONTRERAS, CABRERA, DE LA PAZ, VANDOREN, MORALES, F. HOLGUIN, E. HOLGUIN, MARTINEZ, MURIETTA, A. GAITAN, M. JAIMEZ, M. SALINAS, PEREZ, MORENO, NILA, GAVALDON, SR., GALLARDO, PIZANO, ALATORRE, D. GONZALES, N. JAIMEZ, GAVALDON, JR., FELIX, and FRANCO, and others known and unknown to the Grand Jury, committed various overt acts, on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.    On April 26, 2004, near Los Nietos Park in Canta Ranas Organization territory, defendant N. JAIMEZ, along with other CR gang members, attempted to rob a group of high school students.

2.    Between October 26, 2004, and April 4, 2015, defendant OLIVAS deposited $1,000 into Mexican Mafia D.G.'s j-pay prison account at Pelican Bay State Prison ("Mexican Mafia D.G.'s prison account").

3.    On February 4, 2007, using coded language in written correspondence, defendant E. HOLGUIN advised Mexican Mafia D.G. that he had attempted to collect taxes on behalf of Mexican Mafia D.G. inside a prison facility, informed Mexican Mafia D.G. that he had been challenged by an inmate who wanted proof that defendant E. HOLGUIN was authorized to do so, and sought Mexican

1    Mafia D.G.'s assistance in resolving this issue.

2         4.    On May 4, 2007, defendant F. HOLGUIN sent a money

3    order in the amount of $50 to Mexican Mafia D.G. at Pelican Bay

4    State Prison for deposit into Mexican Mafia D.G.'s prison

5    account.

6         5.    On July 13, 2007, using coded language in an in-person

7    visit at the Los Angeles County Jail ("LACJ"), Mexican Mafia

8    D.G. instructed defendant OLIVAS to tell an individual that

9    Mexican Mafia D.G. would not tolerate that individual's harsh

10   treatment of Canta Ranas Organization members and that Mexican

11   Mafia D.G. would come down hard on the individual if he (the

12   individual) did not respect Mexican Mafia D.G.'s wishes.

13        6.    On October 21, 2007, defendant E. HOLGUIN sent Mexican

14   Mafia D.G. a card with frogs and spiders on it and notified

15   Mexican Mafia D.G. that defendant E. HOLGUIN was currently

16   incarcerated in Chino, California.

17        7.    On October 10, 2008, defendant MURIETTA deposited $30

18   into Mexican Mafia D.G.'s prison account.

19        8.    Between May 4, 2009 and April 28, 2015, defendant

20   OROZCO deposited $370 into Mexican Mafia D.G.'s prison account.

21        9.    On June 23, 2009, using coded language in written

22   correspondence, defendant RODRIGUEZ told Mexican Mafia D.G. that

23   defendant LOZA had caused an unidentified gang member to be

24   removed from the prison yard/facility due to the individual

25   being a problem.

26        10.   On October 3, 2009, using coded language in an in-

27   person visit at Pelican Bay State Prison, defendant RODRIGUEZ

28   reported to Mexican Mafia D.G. about rival Los Nietos gang

1  members targeting her residence and told him that she had

2  defendant LOZA order a leader of the rival Los Nietos gang to

3  leave defendant RODRIGUEZ's residence alone.

4       11.  On October 3, 2009, using coded language in an in-

5  person visit at Pelican Bay State Prison, defendant RODRIGUEZ

6  confirmed that she would relay to an individual Mexican Mafia

7  D.G.'s order that Mexican Mafia D.G. wanted the individual's

8  assurance that Los Nietos gang members would no longer cause

9  problems at defendant RODRIGUEZ's residence.

10      12.  On October 3, 2009, using coded language in an in-

11  person visit at Pelican Bay State Prison, defendant RODRIGUEZ

12  told Mexican Mafia D.G. about problems she was having with

13  defendant MURIETTA, including that defendant MURIETTA was

14  indiscreetly carrying around written correspondence from Mexican

15  Mafia D.G. and using it to intimidate people.

16      13.  On October 3, 2009, using coded language in an in-

17  person visit at Pelican Bay State Prison, defendant RODRIGUEZ

18  confirmed with Mexican Mafia D.G. that she, not defendant

19  MURIETTA, had his support to conduct business on his behalf and

20  with his authorization.

21      14.  On October 3, 2009, using coded language in an in-

22  person visit at Pelican Bay State Prison, Mexican Mafia D.G.

23  told defendant RODRIGUEZ that she had his authorization to tell

24  defendants LOZA and MURIETTA that Mexican Mafia D.G. viewed

25  defendant MURIETTA as being in bad standing.

26      15.  On October 3, 2009, using coded language in an in-

27  person visit at Pelican Bay State Prison, Mexican Mafia D.G.

28  directed defendant RODRIGUEZ to relay to an unindicted co-

18

conspirator that the order to assist defendant RODRIGUEZ with funds to visit Mexican Mafia D.G. came directly from Mexican Mafia D.G. himself.

16.   On January 15, 2010, defendants A. JAIMEZ, S. JAIMEZ, and VIRAMONTES, and other unindicted co-conspirators, threatened to tax residents who were hosting a private party in Santa Fe Springs, California, and to shoot up the residence because they (the residents) were in Canta Ranas Organization territory.

17.   On March 6, 2010, in Los Nietos Park within Canta Ranas Organization territory, defendants ESPINOZA and S. JAIMEZ, and unindicted co-conspirators, harassed people.

18.   On April 4, 2010, defendant RODRIGUEZ sent a $60 money order to Pelican Bay State Prison for deposit into Mexican Mafia D.G.'s prison account.

19.   On April 22, 2010, defendant OROZCO sent a $45 money order for deposit into Mexican Mafia D.G.'s prison account and advised Mexican Mafia D.G. in an accompanying letter that a lot of Canta Ranas Organization members did not have faith in an unindicted co-conspirator's leadership.

20.   On September 21, 2010, using coded language in written correspondence, defendant OROZCO told Mexican Mafia D.G. that another unidentified co-conspirator was collecting taxes using Mexican Mafia D.G.'s name; defendant OROZCO also enclosed a money order in the amount of $45 for Mexican Mafia D.G. with the correspondence.

21.   On August 5, 2011, using coded language in a Facebook conversation, defendant A. GONZALEZ threatened an individual, possibly a rival gang member, telling him that he (defendant A.

1  GONZALEZ) was in possession of a 20 gauge shotgun and a .38
2  caliber firearm.
3      22.  On August 24, 2011, using coded language in a Facebook
4  conversation, defendant A. GONZALEZ and an unindicted co-
5  conspirator agreed to get together and assault Brown Brotherhood
6  gang members.
7      23.  On August 25, 2011, using coded language in a Facebook
8  conversation, defendant A. GONZALEZ told an unindicted co-
9  conspirator that he had three firearms and that he was going to
10 assault a rival gang member.
11     24.  On November 3, 2011, from Pelican Bay State Prison, an
12 unindicted co-conspirator sent written correspondence to
13 defendant F. HOLGUIN asking defendant F. HOLGUIN if, in the
14 future, he would pass a message to Mexican Mafia D.G.
15     25.  Between November 14, 2011, and October 1, 2014,
16 defendant VASQUEZ deposited $5,600 into Mexican Mafia D.G.'s
17 prison account.
18     26.  On November 24, 2011, using coded language in a
19 Facebook conversation, defendant A. GONZALEZ told an individual
20 that he possessed a .38 caliber firearm.
21     27.  On April 11, 2012, at his residence, defendant
22 ALATORRE possessed two Winchester .9mm Ruger rounds and CR gang
23 paraphernalia.
24     28.  On June 24, 2012, using coded language in a Facebook
25 conversation, defendant VIRAMONTES asked an unindicted co-
26 conspirator if the individual knew of any firearms for sale.
27     29.  On June 29, 2012, using coded language in a Facebook
28 conversation, defendant VIRAMONTES told a gang member that he

20

1  would sell him a .32 caliber firearm for $250.

2      30. On or before August 31, 2012, defendant VIRAMONTES

3  tagged "SFROGS 13 PSGUNNERS BALA FREE SWIFTY" at an unknown

4  location.

5      31. On September 9, 2012, using coded language in a series

6  of text messages, defendant GALLARDO asked defendant VIRAMONTES

7  if he was ready to "bang" (i.e., "gang bang," referring to

8  illicit activities undertaken on behalf of a gang) that evening;

9  defendant VIRAMONTES responded to defendant GALLARDO in the

10  affirmative.

11      32. On or before September 18, 2012, at an unknown

12  location, defendants GALLARDO, VIRAMONTES, and MORENO, and an

13  unindicted co-conspirator tagged "CANTA RANAS 13."

14      33. On September 18, 2012, using coded language in a

15  series of text messages, defendant GALLARDO asked defendant

16  VIRAMONTES whether he had any .38 caliber ammunition that he

17  could supply to defendant GALLARDO for the firearm that

18  defendant GALLARDO had just obtained from Arizona, to which

19  defendant VIRAMONTES replied that he did.

20      34. On September 21, 2012, in a vehicle he was driving,

21  defendant F. HOLGUIN possessed a mixture and substance

22  containing a detectable amount of heroin.

23      35. On October 7, 2012, using coded language in a recorded

24  jail conversation, defendant PANIAGUA told an unindicted co-

25  conspirator that he was considering giving a firearm to this

26  individual after the individual was released from the LACJ.

27      36. On November 19, 2012, using coded language in a three-

28  way recorded jail conversation, defendant VIRAMONTES told

21

1  defendant PANIAGUA and an unindicted co-conspirator that he had

2  committed a robbery at a liquor store with defendant A. GONZALEZ

3  which had been captured on videotape, and that defendant A.

4  GONZALEZ was facing twenty years imprisonment for the crime.

5       37.  On November 19, 2012, using coded language in a three-

6  way recorded jail conversation, defendant VIRAMONTES told

7  defendant PANIAGUA and an unindicted co-conspirator, "Hell ya we

8  been shooting those fools up, fool," in response to the

9  unindicted co-conspirator stating that he had heard rival Los

10 Nietos gang members would be assaulting CR gang members housed

11 in the same LACJ jail dorm.

12      38.  On November 21, 2012, using coded language in a

13 Facebook conversation, defendant VIRAMONTES told defendant

14 ALATORRE to be careful of retaliation because he (defendant

15 VIRAMONTES) had shot at rival gang members from Norwalk two days

16 prior.

17      39.  On November 29, 2012, defendant ANTOLIN possessed a

18 Lorcin Model .22 caliber pistol, various .22 caliber ammunition

19 rounds, CR gang paraphernalia, and a digital scale.

20      40.  On December 28, 2012, using coded language in a series

21 of text messages, defendants GALLARDO and NILA talked about who

22 would store defendant D. GONZALES's shotgun, and about how rival

23 Los Nietos gang members had been shooting at defendant NILA's

24 residence.

25      41.  On January 3, 2013, defendant VIRAMONTES possessed a

26 loaded short-barreled shotgun, various Remington and Buck

27 shotgun shells, and various .223 ammunition rounds.

28      42.  On January 4, 2013, using coded language in a series

of text messages, defendant ANTOLIN asked defendant GALLARDO if
he could purchase defendant GALLARDO's firearm, to which
defendant GALLARDO responded that it was not for sale and that
he needed it because he had been shot at by an 18th Street gang
member.

43.  On January 4, 2013, using coded language in a text
message, defendant NILA told defendant GALLARDO that he was in
Canta Ranas Organization territory "gang banging."

44.  On January 14, 2013, using coded language in a series
of text messages, defendant GALLARDO complained to defendant
GAITAN that defendant R. CONTRERAS was making explicit threats
while collecting taxes on behalf of the Canta Ranas
Organization, and that he should not be so disrespectful.

45.  On January 14, 2013, in a vehicle he was driving,
defendant GALLARDO possessed a loaded Johnson Arms and Cycle
Works .32 caliber chrome revolver.

46.  On January 14, 2013, at his residence, defendant
GALLARDO possessed fifteen .38 caliber Smith & Wesson bullets,
nine .22 caliber bullets, seven live .32 caliber bullets (six
Smith & Wesson, and one hollow point CBC), one 7.6mm GRI bullet,
and CR gang paraphernalia.

47.  On February 4, 2013, using coded language in written
correspondence, defendant E. HOLGUIN apprised Mexican Mafia D.G.
that defendant F. HOLGUIN was in custody in LACJ.

48.  On February 21, 2013, using coded language in written
correspondence sent via a third party, defendant F. HOLGUIN
reported to Mexican Mafia D.G. that he was in custody at LACJ
and asked Mexican Mafia D.G. to tell defendant OLIVAS that

1  defendant F. HOLGUIN was in jail.

2      49.  On February 21, 2013, using coded language in written

3  correspondence sent via a third party, defendant F. HOLGUIN told

4  Mexican Mafia D.G. that he would attempt to send money to

5  Mexican Mafia D.G. in a week or two.

6      50.  On April 3, 2013, defendant PANIAGUA and others went

7  to assault defendant S. JAIMEZ because defendant S. JAIMEZ was

8  perceived as not complying with the authority of the Canta Ranas

9  Organization and, therefore, in violation of Canta Ranas

10  Organization rules.

11      51.  On April 3, 2013, in a vehicle he was driving,

12  defendant ALATORRE possessed a loaded Llama .380 caliber semi-

13  automatic handgun and a loaded Phoenix Arms .22 caliber

14  semiautomatic handgun.

15      52.  On April 10, 2013, using coded language in a telephone

16  conversation, defendant FRANCO admitted that she engages in

17  fraud and that she was willing to purchase items for defendant

18  PANIAGUA using fraudulent credit cards.

19      53.  On April 27, 2013, defendant PANIAGUA engaged in a

20  shoot-out with an individual, possibly a rival LTP gang member,

21  firing off approximately eleven shots.

22      54.  On April 28, 2013, using coded language in a series of

23  text messages, defendant ANTOLIN arranged to sell narcotics to a

24  drug customer.

25      55.  On April 28, 2013, defendant ANTOLIN possessed

26  approximately 2.1 grams of methamphetamine, drug paraphernalia,

27  and a fixed-blade knife.

28      56.  On April 28, 2013, using coded language in a telephone

conversation, defendant FRANCO told an individual that defendant
PANIAGUA had been involved in a shooting the prior night, that
she believed it was a "set-up," and that as a result, she went
and retrieved a firearm that had been lent to another person so
that she could protect herself.

57.  On April 28, 2013, using coded language in a telephone
conversation, defendant PANIAGUA told an individual that he had
been in a gunfight in which he had returned eleven shots at the
person who was shooting at him.

58.  On April 28, 2013, using coded language in a telephone
conversation, an unindicted co-conspirator asked defendant
PANIAGUA if he had heroin for sale, to which defendant PANIAGUA
stated that he did.

59.  On May 1, 2013, in Canta Ranas Organization territory,
defendant PANIAGUA possessed a loaded .380 caliber handgun, a
loaded .22 caliber handgun, and a loaded .9mm handgun, and
additional rounds of ammunition, including at least one 8mm
Smith & Wesson hollow point round.

60.  On May 3, 2013, using coded language in a telephone
conversation, defendant FELIX told defendant GAITAN that
defendant R. CONTRERAS had dropped off $270 on a Green Dot card
and asked if defendant GAITAN wanted to go retrieve it.

61.  On May 5, 2013, using coded language in a telephone
conversation, defendants GAITAN and CASILLAS talked about the
taxes which defendant CASILLAS owed to defendant GAITAN, and the
fact that the taxes could be used for defendant GAITAN to
purchase more narcotics from a source of supply.

62.  On May 7, 2013, using coded language in a telephone

1   conversation, defendants GAITAN and S. JAIMEZ agreed to give

2   defendant M. JAIMEZ $200 to purchase heroin which defendant M.

3   JAIMEZ would then have smuggled into prison for distribution.

4        63.  On May 7, 2013, using coded language in a series of

5   text messages, defendants GAITAN and ANTOLIN discussed the

6   bullet capacity of a Smith and Wesson firearm.

7        64.  On May 8, 2013, using coded language in a telephone

8   conversation, defendant M. SALINAS told defendant GAITAN that an

9   inmate located at the same prison as defendant M. SALINAS wanted

10  to contact defendant LOZA regarding conducting narcotics sales

11  on behalf of Mexican Mafia D.G., to which defendant GAITAN

12  agreed to facilitate the communication with defendant LOZA.

13       65.  On May 8, 2013, using coded language in a telephone

14  conversation, defendant GAITAN told defendant M. SALINAS that he

15  would continue to look for heroin suppliers and defendant M.

16  SALINAS requested that defendant GAITAN apprise defendant A.

17  SALINAS if defendant GAITAN found one.

18       66.  On May 8, 2013, using coded language in a series of

19  text messages, defendant A. JAIMEZ informed defendant GAITAN

20  that he (defendant A. JAIMEZ) would deliver $100 in tax payments

21  to defendant GAITAN's mailbox.

22       67.  On May 10, 2013, using coded language in a telephone

23  conversation, defendant MORENO told defendant GAITAN that he had

24  the money to purchase a .22 caliber firearm.

25       68.  On May 10, 2013, using coded language in a telephone

26  conversation, defendant SOTELLO ordered half-an-ounce of

27  methamphetamine from defendant GAITAN.

28

69. On May 10, 2013, defendant SOTELLO went to defendant GAITAN's residence to pick up half-an-ounce of methamphetamine.

70. On May 10, 2013, using coded language in a telephone conversation, defendant MORENO advised defendant GAITAN that he was prepared to purchase a 7.62mm firearm for $300.

71. On May 10, 2013, using coded language in a telephone conversation, defendant GAITAN informed defendant SOTELLO that defendant MORENO was ready to purchase two firearms which defendant SOTELLO was selling, and defendant SOTELLO stated that he would be ready to complete the sale that evening.

72. On May 10, 2013, using coded language in a telephone conversation, defendant LOZA instructed defendant GAITAN to speak with defendant CASILLAS because defendant CASILLAS was late in delivering tax payments.

73. On May 10, 2013, using coded language in a telephone conversation, defendant M. SALINAS told defendant GAITAN that his (defendant M. SALINAS's) girlfriend would bring heroin into the prison that weekend and that defendant M. SALINAS would have the money from the heroin sales sent to defendant A. SALINAS, who, in turn, would get the money to defendant GAITAN so that it could be paid to Mexican Mafia D.G.

74. On May 10, 2013, using coded language in a telephone conversation, defendant M. SALINAS told defendant GAITAN that his heroin supplier was a MS-13 street gang member who would supply him with ounce and quarter pound amounts at a time.

75. On May 10, 2013, using coded language in a telephone conversation, defendant M. SALINAS told defendant GAITAN that he had two ounces of heroin, that defendant A. SALINAS would be

27

picking up additional heroin, and that defendant GAITAN should tell defendant M. JAIMEZ that if he needed an ounce of heroin, defendant M. SALINAS would be able to supply it on credit for $600 per ounce.

76. On May 11, 2013, using coded language in a series of text messages, defendant DE LA PAZ told defendant GAITAN that an individual was willing to sell a .45 caliber firearm for $500 and a 9 millimeter firearm for $400 or exchange bottles of codeine for the firearms.

77. On May 11, 2013, using coded language in a telephone conversation, defendant CASILLAS told defendant GAITAN that he had $400 in tax payments to deliver to defendant GAITAN.

78. On May 11, 2013, using coded language in a telephone conversation, defendants PIZANO and GAITAN agreed to meet to discuss pricing for methamphetamine, cocaine, and marijuana.

79. On May 11, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant PIZANO that he (defendant PIZANO) owed $60 in tax payments.

80. On May 11, 2013, using coded language in a telephone conversation, defendant GAVALDON, SR. told defendant GAITAN that an individual needed to stop using Mexican Mafia D.G.'s name to collect taxes in a prison yard.

81. On May 11, 2013, using coded language in a telephone conversation, defendant GAVALDON, SR. asked defendant GAITAN to wire $100 to his prison account.

82. On May 11, 2013, using coded language in a telephone conversation, defendant R. CONTRERAS asked defendant GAITAN if he had any methamphetamine.

28

83.  On May 12, 2013, using coded language in a telephone conversation, defendants GAITAN and R. CONTRERAS arranged to meet at an unknown location to conduct a methamphetamine purchase.

84.  On May 12, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant M. JAIMEZ that defendant M. SALINAS would be selling heroin in the prison yard and that some of the proceeds would be paid to Mexican Mafia D.G.

85.  On May 12, 2013, using coded language in a telephone conversation, defendant GAITAN relayed to defendant M. JAIMEZ that defendants GAITAN and S. JAIMEZ would give $200 to defendant M. JAIMEZ to help pay for narcotics which defendant M. JAIMEZ was trying to get smuggled into the prison in which he (defendant M. JAIMEZ) was an inmate.

86.  On May 12, 2013, using coded language in a telephone conversation, defendant CASILLAS told defendant GAITAN that he (defendant CASILLAS) would be picking up another $40 or $50 in tax payments, and would drop off the money to defendant GAITAN the following day.

87.  On May 13, 2013, using coded language in a series of text messages, defendant A. JAIMEZ told defendant GAITAN to confront defendant D. CONTRERAS because she was telling certain individuals that they did not need to pay taxes on narcotics sales because of her affiliation with the Canta Ranas Organization.

88.  On May 13, 2013, using coded language in a telephone conversation, defendant CASILLAS told defendant GAITAN about an

29

1  individual who possessed two Glock firearms for sale for $500
2  each, and that he had a good portion of the taxes which he owed
3  defendant GAITAN.

4      89.  On May 13, 2013, using coded language in a telephone
5  conversation, defendant GAVALDON, SR. told defendant GAITAN to
6  give $100 to defendant OLIVAS, who would then transmit it to
7  defendant GAVALDON, SR.

8      90.  On May 13, 2013, using coded language in a telephone
9  conversation, defendants PIZANO and GAITAN arranged to meet to
10 discuss narcotics prices.

11     91.  On May 13, 2013, using coded language in a series of
12 text messages, defendants PIZANO and GAITAN negotiated a sale
13 price of $3,000 for half a pound of methamphetamine, during
14 which defendant PIZANO represented that his supplier had better
15 quality methamphetamine than defendant GAITAN had been selling.

16     92.  On May 13, 2013, using coded language in a series of
17 text messages, defendant PIZANO told defendant GAITAN that a
18 supplier he knew would sell defendant GAITAN a quarter pound of
19 methamphetamine for $1,700 as a test to see if defendant
20 GAITAN's customers liked it, and that if they did, the supplier
21 would sell defendant GAITAN half a pound of methamphetamine;
22 defendant PIZANO asked defendant GAITAN to let him know when he
23 was ready to move forward.

24     93.  On May 13, 2013, using coded language in a telephone
25 conversation, defendant GAITAN received a message sent by
26 defendant M. JAIMEZ stating that he (defendant M. JAIMEZ) needed
27 $200 to be put on a Green Dot card to help pay for narcotics,
28 and asking for defendants M. SALINAS and A. SALINAS's telephone

numbers because defendant M. JAIMEZ was planning to smuggle heroin into the prison that weekend and would need to communicate with them to make arrangements for obtaining the heroin.

94.   On May 13, 2013, using coded language in a telephone conversation, defendant GAVALDON, JR. agreed to relay to defendant OLIVAS that defendants LOZA and GAITAN intended to visit her at her residence so that she could meet defendant GAITAN; defendants GAITAN and GAVALDON, JR. then talked about depositing money on defendant GAVALDON, SR.'s prison account.

95.   On May 14, 2013, using coded language in a telephone conversation, defendant ALVAREZ asked defendant GAITAN to provide him with an address to send tax payments destined for Mexican Mafia D.G.

96.   On May 14, 2013, using coded language in a telephone conversation, defendant R. CONTRERAS asked defendant GAITAN to accompany him to a meeting with an individual to discuss that person's payment of taxes.

97.   On May 14, 2013, using coded language in a telephone conversation, defendant DE LA PAZ told defendant GAITAN that he had sold most of the methamphetamine provided to him by defendant GAITAN, and that he would bring the proceeds to defendant GAITAN later that evening.

98.   On May 14, 2013, using coded language in a telephone conversation, defendant R. CONTRERAS told defendant GAITAN that an individual was at home and ready to talk to defendants R. CONTRERAS and GAITAN about her payment of taxes; both agreed to meet near a McDonald's restaurant.

99.  On May 14, 2013, using coded language in a telephone conversation, defendant GAITAN spoke with an unindicted co-conspirator who asked for defendant M. SALINAS's telephone number on behalf of defendant M. JAIMEZ, and also asked defendant GAITAN to text him (the unindicted co-conspirator) the Green Dot number once $200 was put onto a Green Dot Card.

100. On May 14, 2013, defendants GAITAN and R. CONTRERAS met with an individual to discuss the payment of taxes.

101. On May 14, 2013, in a text message, defendant GAITAN sent defendant A. SALINAS's telephone number to defendant M. JAIMEZ so that defendant M. JAIMEZ could contact defendant A. SALINAS for heroin.

102. On May 14, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant R. CONTRERAS to let him know when an individual needed more methamphetamine and that the individual was already aware of the pricing.

103. On May 14, 2013, and May 15, 2013, using coded language in a series of telephone conversations, defendant GAITAN and an unindicted co-conspirator arranged to meet at a CVS Pharmacy in Whittier, California, so that the unindicted co-conspirator could purchase methamphetamine which would be smuggled into the LACJ, and ultimately to defendant PANIAGUA.

104. On May 15, 2013, defendant FRANCO drove an unindicted co-conspirator to a CVS in Whittier, California, so that the individual could obtain methamphetamine from defendant GAITAN and then smuggle it into the LACJ for delivery to defendant PANIAGUA, an inmate at LACJ.

105. On May 15, 2013, in a text message, defendant GAITAN

32

1 sent defendant M. JAIMEZ the number of a Green Dot card onto
2 which $200 had been put.

3     106. On May 15, 2013, using coded language in a telephone
4 conversation, defendant M. JAIMEZ told defendant GAITAN that he
5 had informed the inmate who controlled the prison yard and that
6 he (defendant M. JAIMEZ) would be selling narcotics in the
7 prison yard on behalf of Mexican Mafia D.G.

8     107. On May 15, 2013, using coded language in a telephone
9 conversation, defendant GAITAN told defendant M. JAIMEZ that
10 defendant ALVAREZ was collecting taxes from street gangs in the
11 Sacramento, California, area, on behalf of Mexican Mafia D.G.,
12 and asked defendant M. JAIMEZ to find inmates who could assist
13 with this task.

14     108. On May 15, 2013, using coded language in a telephone
15 conversation, defendant GAITAN told defendant M. JAIMEZ that
16 defendant M. SALINAS had a source of supply who could sell an
17 ounce of heroin for $600 and that defendant A. SALINAS would be
18 picking up the heroin, to which defendant M. JAIMEZ responded
19 that he would call defendant A. SALINAS to touch base with him.

20     109. On May 15, 2013, using coded language in a telephone
21 conversation, defendant M. JAIMEZ asked defendant GAITAN to tell
22 Mexican Mafia D.G. that he (defendant M. JAIMEZ) would kill for
23 Mexican Mafia D.G. if he was in the same prison yard as an
24 inmate whom Mexican Mafia D.G. wanted to be killed.

25     110. On May 15, 2013, using coded language in a text
26 message, defendant GAVALDON, JR. sent defendant GAVALDON, SR.'s
27 information to defendant GAITAN so that defendant GAITAN could
28 send money to defendant GAVALDON, SR.

111. On May 16, 2013, using coded language in a telephone conversation, defendant M. SALINAS told defendant GAITAN that he would send taxes generated from narcotics sales in his prison yard to defendants LOZA and GAITAN; defendant GAITAN told defendant M. SALINAS that defendant LOZA would give the proceeds to Mexican Mafia D.G.

112. On May 16, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant M. JAIMEZ that defendant M. SALINAS would provide 22 grams of heroin to defendant M. JAIMEZ for $600.

113. On May 16, 2013, using coded language in a series of text messages, defendant GAITAN instructed defendant ALVAREZ to send tax payments that he had collected to the residence of defendant FELIX.

114. On May 16, 2013, using coded language in a telephone conversation, defendant SOTELLO told defendant GAITAN that he had shot at an individual, that he had given the firearm to his brother-in-law, and that he would retrieve the firearm and give it to defendant GAITAN so that members of the Canta Ranas Organization could protect themselves from rival Los Nietos gang members.

115. On May 16, 2013, using coded language in a telephone conversation, defendant MORENO agreed to purchase two firearms for himself and defendant D. GONZALES from defendant GAITAN's firearms supplier.

116. On May 16, 2013, using coded language in a telephone conversation, defendant ALVAREZ told defendant GAITAN that at defendant GAITAN's direction, he (defendant ALVAREZ) would

1  arrange to collect taxes from a gang in the Sacramento,
2  California, area.

3      117. On May 17, 2013, using coded language in a telephone
4  conversation, defendant M. JAIMEZ told defendant GAITAN that he
5  (defendant M. JAIMEZ) had identified inmates who would assist
6  defendant ALVAREZ with collecting taxes from gangs in the
7  Sacramento, California, area.

8      118. On May 17, 2013, using coded language in a series of
9  text messages, defendant GAITAN told defendant ALVAREZ that
10 defendant M. JAIMEZ had made arrangements for members of the
11 47th Street gang in Sacramento, California, to assist defendant
12 ALVAREZ with collecting taxes, to which defendant ALVAREZ
13 responded that he was already collecting taxes from that gang.

14     119. On May 17, 2013, using coded language in a telephone
15 conversation, defendant ALVAREZ told defendant GAITAN that an
16 unindicted co-conspirator owed a $400 drug debt to Mexican Mafia
17 D.G. and another Mexican Mafia member.

18     120. On May 17, 2013, using coded language in a telephone
19 conversation, defendant HIGUERA told defendant GAITAN that he
20 had money to pay for methamphetamine and that defendant GAITAN
21 should bring the methamphetamine to him.

22     121. On May 17, 2013, using coded language in a telephone
23 conversation, defendant M. JAIMEZ told defendant GAITAN that his
24 cellmate was going to select the individual from his own gang
25 (the 47th Street criminal gang) who would provide defendant
26 ALVAREZ with tax payments from that gang.

27     122. On May 17, 2013, using coded language in a series of
28 text messages, defendant ALVAREZ told defendant GAITAN that

although he (defendant ALVAREZ) was in control of collecting taxes in the Sacramento, California, area, he would facilitate a call between defendant GAITAN and representatives of the 47th Street during which they could discuss the amount of taxes the gang would be expected to pay defendant ALVAREZ.

123. On May 18, 2013, using coded language in a telephone conversation, defendant CASILLAS told defendant GAITAN that he (defendant CASILLAS) was still collecting taxes and would give the money to defendant GAITAN as scheduled on the following day; defendant CASILLAS further told defendant GAITAN that he had encountered an individual, who was not supposed to be around in Canta Ranas Organization territory, but he had not assaulted this individual because he had been told that the individual was hands-off.

124. On May 18, 2013, using coded language in a telephone conversation, defendant LOZA instructed defendant M. SALINAS to tell an inmate at defendant M. SALINAS's prison that he (the inmate) needs to stop saying he was working for Mexican Mafia D.G. and that defendant LOZA was the person who could provide the requisite authority and order the individual to be punished for falsely claiming such authority.

125. On May 19, 2013, using coded language in a telephone conversation, defendant A. GONZALEZ told defendant GAITAN that he had the taxes and the ability to obtain firearms for the gang.

126. On May 20, 2013, using coded language in a telephone conversation, defendant M. SALINAS told defendant GAITAN that he would be selling narcotics in the prison yard during that

weekend and would send some of the sale proceeds to defendant
GAITAN on behalf of defendant M. JAIMEZ and himself.

127. On May 20, 2013, using coded language in a telephone
conversation, defendants GAITAN and OROZCO discussed a former
Canta Ranas Organization member who was in bad standing because
he and his family had given information to law enforcement; both
further talked about how defendant OROZCO had conducted a
meeting with Brown Brotherhood gang members during which he had
advised them that this individual was in bad standing, and how
defendant A. GONZALEZ and others had beaten up this former Canta
Ranas Organization member in front of his residence.

128. On May 20, 2013, using coded language in a telephone
conversation, defendant OROZCO told defendant GAITAN to instruct
younger Canta Ranas Organization members to stop posting gang-
related information on Facebook due to law enforcement's
monitoring of that activity.

129. On May 21, 2013, using coded language in a series of
text messages, defendant S. JAIMEZ reported to defendant GAITAN
that he had $100 for defendant M. JAIMEZ, as discussed
previously.

130. On May 21, 2013, using coded language in a telephone
conversation, defendant GAITAN told defendant ANTOLIN that he
(defendant ANTOLIN) and other Canta Ranas Organization members
owed taxes; defendants GAITAN and ANTOLIN also discussed
potential firearms to buy and sell; defendant ANTOLIN moreover
referred to defendant NILA's cousin who had recently been shot
because he was a "snitch."

131. On May 22, 2013, using coded language in a telephone

37

conversation, defendant CASILLAS told defendant GAITAN that defendant CASILLAS had $200 in tax payments and that he (defendant CASILLAS) would have the full amount owed after he sold the drugs within his possession; defendant GAITAN instructed defendant CASILLAS to collect taxes from defendants ANTOLIN and PIZANO, to which defendant CASILLAS agreed and stated that he would assault them, if they opposed paying the tax.

132. On May 23, 2013, using coded language in a telephone conversation, defendant FELIX told defendant GAITAN that he was willing to send money to defendant GAVALDON, SR. in prison, and to use his name and address when doing so.

133. On May 23, 2013, using coded language in a telephone conversation, defendant GAVALDON, JR. agreed to send defendant GAVALDON, SR.'s information to defendant GAITAN so that defendant GAITAN could transmit $100 in taxes to defendant GAVALDON, SR.

134. On May 23, 2013, using coded language in a text message, defendant GAVALDON, JR. provided defendant GAVALDON, SR.'s name and inmate registration number to defendant GAITAN as previously agreed.

135. On May 23, 2013, defendant GAITAN drove defendant FELIX to a Western Union located in Whittier, California, where defendant FELIX wired $100 in tax proceeds into defendant GAVALDON, SR.'s prison account.

136. On May 23, 2013, using coded language in a telephone conversation, defendants GAITAN and CASILLAS talked about defendant CASILLAS's efforts to collect taxes from defendants

1   ANTOLIN and PIZANO.

2       137. On May 23, 2013, using coded language in a telephone

3   conversation, defendant GAITAN told defendant PIZANO that he

4   (defendant PIZANO) would need to pay double the taxes he owed

5   because he was late on the payments, to which defendant PIZANO

6   responded that he would pay defendant GAITAN the remaining $30

7   by no later than the following day.

8       138. On May 23, 2013, defendant LOZA went to defendant

9   OLIVAS' residence to give defendant OLIVAS tax proceeds to help

10  pay for defendant OLIVAS' trip to Pelican Bay State Prison so

11  that she could meet with, and receive orders from, Mexican Mafia

12  D.G.

13      139. On May 25, 2013, using coded language in a telephone

14  conversation, defendant CASILLAS informed defendant GAITAN that

15  he had three grams of methamphetamine to sell before he would

16  have the full amount of taxes owed to defendant GAITAN, who, in

17  turn, said he would use this money to purchase additional

18  narcotics.

19      140. On May 25, 2013, using coded language in a telephone

20  conversation, defendants GAITAN and CASILLAS discussed that

21  defendant GOULET had been "jumped into" the CR gang by defendant

22  MORALES, that defendant GOULET had to be hit on the head with a

23  firearm to get him off another individual with whom defendant

24  GOULET had been fighting, and that defendant GOULET was willing

25  to collect taxes on behalf of the Canta Ranas Organization.

26      141. On May 25, 2013, using coded language in a telephone

27  conversation, defendant S. JAIMEZ told defendant GAITAN that he

28  would give defendant GAITAN $100 later that day for defendant M.

39

1 | JAIMEZ, as discussed previously.

2 |     142. On May 25, 2013, using coded language in a series of
3 | text messages, defendant ANTOLIN asked defendant GAITAN about
4 | the availability of firearms.

5 |     143. On May 26, 2013, using coded language in a telephone
6 | conversation, defendant GAITAN asked defendant DE LA PAZ to pay
7 | for the methamphetamine which defendant GAITAN had "fronted", to
8 | which defendant DE LA PAZ responded that he had not sold all of
9 | it yet and was waiting for defendants NILA and VIRAMONTES to pay
10 | him for the methamphetamine that he had distributed to them.

11 |     144. On May 26, 2013, using coded language in a series of
12 | text messages, defendant R. CONTRERAS told defendant GAITAN that
13 | an individual needed more methamphetamine.

14 |     145. On May 26, 2013, using coded language in a telephone
15 | conversation, defendant DE LA PAZ asked defendant GAITAN for
16 | permission to ask defendant R. CONTRERAS to pay the $20 he owed
17 | so that defendant DE LA PAZ could use that money to help pay his
18 | drug debt to defendant GAITAN; defendant GAITAN told defendant
19 | DE LA PAZ that he (defendant DE LA PAZ) could try to get the
20 | money from defendant R. CONTRERAS but that if he was not able to
21 | do so, defendant GAITAN would get the money from defendant R.
22 | CONTRERAS himself.

23 |     146. On May 26, 2013, using coded language in a telephone
24 | conversation, defendant GAITAN confirmed to defendant DE LA PAZ
25 | that he ordered unidentified co-conspirators to collect taxes,
26 | but that he had not instructed them to collect from defendant DE
27 | LA PAZ yet because he sent them to individuals for collection
28 | only when necessary.

1      147. On May 27, 2013, using coded language in a telephone

2  conversation, defendants GAITAN and CASILLAS talked about

3  defendant CASILLAS collecting late tax payments from Canta Ranas

4  Organization members and assaulting them for being late on such

5  payments.

6      148. On May 27, 2013, using coded language in a telephone

7  conversation, defendant BOWERS asked defendant GAITAN for

8  narcotics to sell.

9      149. On May 27, 2013, using coded language in a series of

10  text messages, defendant VANDOREN asked defendant GAITAN for

11  methamphetamine, to which defendant GAITAN responded that he may

12  have some the following day.

13      150. On May 29, 2013, using coded language in a telephone

14  conversation, defendants GAITAN and CASILLAS talked about the

15  quality of the narcotics being sold by the Canta Ranas

16  Organization, and also the taxes defendant CASILLAS was

17  collecting pursuant to defendant GAITAN's instructions.

18      151. On May 29, 2013, using coded language in a telephone

19  conversation, defendant GAITAN told defendant VANDOREN that he

20  would distribute methamphetamine to defendant VANDOREN via

21  defendant CASILLAS at a cost of between $500 to $550 per ounce,

22  with the price tied to how long it would take for defendant

23  VANDOREN to sell the methamphetamine.

24      152. On May 30, 2013, using coded language in a text

25  message, defendant MORENO asked defendant GAITAN if defendant

26  GAITAN had an "eight ball" (approximately 3.5 grams of

27  methamphetamine) for sale.

28      153. On May 31, 2013, using coded language in a telephone

conversation, defendant ANTOLIN, after advising defendant GAITAN that he and defendant VANDOREN had tax payments for defendant GAITAN, discussed with defendant GAITAN whether defendant GAITAN would use the $160 in tax payments provided by defendant NILA to purchase a firearm.

154. On June 1, 2013, using coded language in a telephone conversation, defendant MENDOZA asked defendant GAITAN if he had methamphetamine, to which defendant GAITAN responded that he would have some to distribute the following day.

155. On June 2, 2013, using coded language in a telephone conversation, defendant M. JAIMEZ told defendant GAITAN that he had begun selling narcotics in the prison yard, and that he would send defendant GAITAN tax payments to give to Mexican Mafia D.G. on his behalf.

156. On June 2, 2013, in a parking lot in Pico Rivera, California, defendant VASQUEZ distributed one-half pound of methamphetamine to defendant GAITAN.

157. On June 2, 2013, defendant GAITAN brought one-half pound of methamphetamine to defendant D. CONTRERAS so that she could repackage it for sale.

158. On June 2, 2013, using coded language in a telephone conversation, defendant D. CONTRERAS told defendant GAITAN that she was in the process of repackaging the methamphetamine.

159. On June 2, 2013, using coded language in a telephone conversation, defendant D. CONTRERAS told defendant GAITAN that defendant A. GAITAN had called and had arranged to pick up the methamphetamine after visiting a store.

160. On June 2, 2013, using coded language in a telephone

1  conversation, defendant GAITAN asked defendant A. GAITAN why it
2  was taking defendant A. GAITAN so long to get methamphetamine
3  from defendant D. CONTRERAS's residence, to which defendant A.
4  GAITAN responded that she was running late because she had to
5  stop by a store to get something to hide the methamphetamine in
6  before she could pick it up.

7       161. On June 2, 2013, defendant D. CONTRERAS distributed
8  approximately one-half pound of methamphetamine to defendant A.
9  GAITAN.

10      162. On June 2, 2013, using coded language in a Facebook
11 conversation, defendant FELIX sent defendant R. CONTRERAS a
12 threatening message, instructing defendant R. CONTRERAS to
13 contact defendant GAITAN because he (defendant R. CONTRERAS) had
14 not paid the $150 monthly tax.

15      163. On June 2, 2013, using coded language in a telephone
16 conversation, defendant GAITAN instructed defendant MENDOZA to
17 go to his (defendant GAITAN's) residence in forty-five minutes
18 to pick up methamphetamine.

19      164. On June 2, 2013, defendant MENDOZA went to defendant
20 GAITAN's residence and picked up approximately 16.2 grams of
21 methamphetamine from defendant GAITAN.

22      165. On June 2, 2013, defendant MENDOZA possessed a 9mm
23 semi-automatic Glock pistol with a magazine containing 18 rounds
24 of ammunition, including five hollow point bullets, and two
25 baggies containing a total of approximately 16.2 grams of
26 methamphetamine.

27      166. On June 3, 2013, using coded language in a telephone
28 conversation, defendant D. CONTRERAS ordered half-an-ounce of

1   methamphetamine from defendant GAITAN.

2       167. On June 3, 2013, using coded language in a telephone

3   conversation, defendant CASILLAS told defendant GAITAN that he

4   (defendant CASILLAS) still had two eight-balls (approximately

5   3.5 grams of methamphetamine each) left to sell.

6       168. On June 4, 2013, using coded language in a telephone

7   conversation, defendant ANTOLIN told defendant GAITAN that he

8   had been incarcerated for five days for possessing the kitchen

9   knife which he always carried, after which the two discussed the

10  taxes owed by an unidentified individual, with defendant GAITAN

11  telling defendant ANTOLIN that it would be the normal $550 minus

12  whatever defendant ANTOLIN owed.

13      169. On June 5, 2013, using coded language in a text

14  message, defendant MORALES told defendant GAITAN that he had

15  spoken with defendant LOZA, and that defendant LOZA wanted his

16  drug debt to be paid in cash, not by the provision of goods to

17  defendants LOZA and GAITAN.

18      170. On June 6, 2013, using coded language in a telephone

19  conversation, defendant GAITAN advised defendant OROZCO that he

20  had spoken with a Brown Brotherhood gang member and had told the

21  individual that it was okay if he did not buy methamphetamine

22  from defendant GAITAN, but that he had to pay $100 in taxes to

23  the Canta Ranas Organization the first of every month for the

24  right to sell narcotics in its territory, which defendant OROZCO

25  noted was a fair arrangement.

26      171. On June 5, 2013, using coded language in a text

27  message, defendant MORALES told defendant GAITAN that he would

28  be working hard to obtain money to pay off his drug debt.

44

172. On June 8, 2013, in Whittier, California, defendant ESPINOZA punched an individual whom he believed to be a member of a rival gang and who had yelled, "Fuck CR," and defendant VILLALBA thereafter further assaulted the individual while the individual was lying unconscious on the ground.

173. On June 8, 2013, using coded language in a series of text messages, defendant GAITAN asked if defendant MORALES could give him money for methamphetamine which he (defendant MORALES) had previously obtained because he (defendant GAITAN) needed to pay defendant VASQUEZ for methamphetamine which defendant VASQUEZ had "fronted" to defendant GAITAN.

174. On June 9, 2013, using coded language in a telephone conversation, defendant ANTOLIN informed defendant GAITAN that he (defendant ANTOLIN) had collected $160 in tax payments which were to be given to defendant GAITAN.

175. On June 10, 2013, using coded language in a series of text messages, defendant VANDOREN asked defendant GAITAN if he had methamphetamine for defendant VANDOREN to sell because defendant VANDOREN only had $70.

176. On June 11, 2013, using coded language in a series of text messages, defendant A. GAITAN told defendant GAITAN that the money that defendant D. CONTRERAS had provided for narcotics was at their residence and inside a box containing a scale.

177. On June 11, 2013, using coded language in a telephone conversation, defendant LOZA told defendant GAITAN to hold onto narcotics proceeds for defendant GAVALDON, JR., who would then transmit them to defendant OLIVAS.

178. On June 11, 2013, at the direction of defendant LOZA,

defendant GAITAN possessed tax payments dropped off by defendant MORENO and another individual.

179. On June 12, 2013, using coded language in a telephone conversation, defendants GAITAN and CASILLAS discussed the actual weight of the ounce of methamphetamine which defendant CASILLAS had picked up from defendant GAITAN, as defendant CASILLAS believed it was short of an ounce.

180. On June 12, 2013, using coded language in a telephone conversation, defendant VILLALBA told defendant GAITAN that he intended to purchase two 30-round rifle magazines for defendant GAITAN, to which defendant GAITAN responded that "one could never have too many" and further stated that he wanted to shoot his "AR."

181. On June 13, 2013, using coded language in a series of text messages, defendant GAITAN asked defendant VILLALBA if he could purchase four 30-round magazines because defendant GAITAN was going to give two of the magazines to another individual, to which defendant VILLALBA responded that he would be picking the four magazines up the following day.

182. On June 13, 2013, using coded language in a telephone conversation, defendant VANDOREN told defendant GAITAN that he was coming over to defendant GAITAN's residence to pick up methamphetamine.

183. On June 13, 2013, using coded language in a telephone conversation, defendant A. JAIMEZ told defendant GAITAN that he (defendant A. JAIMEZ) needed a firearm because he was always running into rival Los Nietos gang members, and that he had sent a text message to defendant DE LA PAZ, asking him if he could

borrow defendant DE LA PAZ's firearm.

184. On June 13, 2013, defendant GAITAN distributed approximately 26.4 grams of methamphetamine to defendant VANDOREN.

185. On June 14, 2013, using coded language in a text message, defendant GAITAN sent defendant A. GAITAN banking information for defendant VILLALBA's wife so that defendant A. GAITAN could electronically send her money to pay for 30-round rifle magazines which defendant VILLALBA was buying on defendant GAITAN's behalf.

186. On June 14, 2013, using coded language in a telephone conversation, defendants GAITAN and GAVALDON, JR. agreed to meet the following day so that defendant GAITAN could give defendant GAVALDON, JR. money to give defendant OLIVAS.

187. On June 14, 2013, using coded language in a telephone conversation, defendant VILLALBA told defendant GAITAN that he had purchased eight 30-round magazines; defendant GAITAN stated that he wanted to shoot his firearm and that he also wanted to take the "AR" and "the Calico."

188. On June 14, 2013, using coded language in a telephone conversation, defendant GAITAN asked defendant GAVALDON, JR. to attend the Canta Ranas Organization meeting set for the following day, explaining that it was important for more senior members like defendant GAVALDON, JR. to be there to set the younger ones straight, to which defendant GAVALDON, JR. responded that he would let defendant GAITAN know if he could attend the meeting.

189. On June 14, 2013, using coded language in a series of

text messages, defendant FELIX asked defendant GAITAN if he could purchase methamphetamine from defendant GAITAN.

190. On June 15, 2013, using coded language in a telephone conversation, defendant SOTELLO ordered methamphetamine from defendant GAITAN.

191. On June 15, 2013, defendant SOTELLO drove to defendant GAITAN's residence to pick up methamphetamine.

192. On June 17, 2013, using coded language in a text message, defendant VANDOREN, who had been stopped by law enforcement after picking up drugs at defendant GAITAN's residence, warned defendant GAITAN that law enforcement was conducting surveillance of defendant GAITAN's residence.

193. On June 17, 2013, using coded language in a telephone conversation, defendant VANDOREN told defendant GAITAN that he was at the tow yard and that he would find out if law enforcement had found the methamphetamine that he had stored in the vehicle.

194. On June 18, 2013, using coded language in a telephone conversation, defendant ESPINOZA told defendant GAITAN about a recent altercation he had with rival Las Tres Palmas gang members.

195. On June 18, 2013, using coded language in a telephone conversation, defendant ESPINOZA told defendant GAITAN that he would attend the meeting arranged by defendants LOZA and GAITAN, and that he would assault any members of the Canta Ranas Organization whom defendant GAITAN believed to be in need of discipline.

196. On June 19, 2013, using coded language in a telephone

1   conversation, defendant FELIX told defendant GAITAN that

2   defendant FELIX would deliver to defendant GAITAN any tax

3   payments mailed by defendant ALVAREZ.

4        197. On June 19, 2013, using coded language in a telephone

5   conversation, defendant SOTELLO asked defendant GAITAN to bring

6   to his residence between half-an-ounce to an ounce of

7   methamphetamine, to which defendant GAITAN agreed.

8        198. On June 19, 2013, defendant GAITAN distributed

9   approximately 14 grams of methamphetamine to defendant SOTELLO.

10       199. On June 19, 2013, using coded language in a telephone

11  conversation, defendant GAITAN asked defendant FELIX to get

12  defendant GAITAN's firearms magazines out of defendant FELIX's

13  garage because defendant GAITAN was going to the shooting range.

14       200. On June 19, 2013, using coded language in a telephone

15  conversation, defendant FELIX told defendant GAITAN that he

16  would leave keys with defendant GAITAN so that defendants LOZA

17  and GAITAN could hold a Canta Ranas Organization meeting at his

18  residence while he and his mother were out.

19       201. On June 20, 2013, using coded language in a telephone

20  conversation with defendant GAITAN, defendant S. JAIMEZ agreed

21  to attend a Canta Ranas Organization meeting and to let other CR

22  gang members know about the meeting.

23       202. On June 20, 2013, defendant GOULET and an unindicted

24  co-conspirator drove to Riverside, California, to collect taxes

25  from the Casa Blanca gang on behalf of Mexican Mafia D.G.

26       203. On June 20, 2013, using coded language in a telephone

27  conversation, defendant GAITAN told defendant A. GONZALEZ that

28  defendant GOULET was collecting taxes from the Casa Blanca gang

1  in Riverside, California.

2      204. On June 20, 2013, using coded language in a telephone

3  conversation, defendant GAITAN instructed defendant A. GONZALEZ

4  to order other CR gang members to assault an individual who owed

5  money to defendant GAITAN upon encountering him.

6      205. On June 20, 2013, defendant GAITAN told defendant A.

7  GONZALEZ that he (defendant A. GONZALEZ) needed to attend a

8  Canta Ranas Organization meeting the upcoming Saturday.

9      206. On June 20, 2013, using coded language in a telephone

10 conversation, defendant A. GONZALEZ told defendant GAITAN that

11 he and an unindicted co-conspirator attempted to collect taxes

12 from another unindicted co-conspirator.

13     207. On June 20, 2013, using coded language in a text

14 message, defendant VILLALBA asked defendant GAITAN whether he

15 (defendant GAITAN) wanted to buy 240 rounds of 7.62 mm

16 ammunition from a third-party supplier.

17     208. On June 20, 2013, using coded language in a telephone

18 conversation, defendant GAITAN told defendant ALVAREZ that he

19 (defendant GAITAN) had received the tax payments which defendant

20 ALVAREZ had mailed.

21     209. On June 21, 2013, using coded language in a text

22 message, defendant GAITAN warned defendant SOTELLO to be careful

23 of rival Whittier Varrio Locos gang members who were in Canta

24 Ranas Organization territory.

25     210. On June 21, 2013, using coded language in a telephone

26 conversation, defendant GAITAN told defendant SOTELLO that

27 defendant MORENO had been shot by rival Whittier Varrio Locos

28 gang members, to which defendant SOTELLO responded that he would

1 | tell defendant GAITAN where three Whittier Varrio Locos street
2 | gang members were when he returned home, and noted that those
3 | three individuals only had a .22 caliber firearm.

4 | 211. On June 21, 2013, using coded language in a telephone
5 | conversation, defendant FELIX told defendant GAITAN that
6 | defendant ALVAREZ had mailed $300 to defendant FELIX's
7 | residence.

8 | 212. On June 21, 2013, using coded language in a telephone
9 | conversation, defendant GAITAN told defendant VILLALBA that he
10 | had a lot of 7.62 mm ammunition and was not interested in
11 | purchasing more unless defendant VILLALBA was able to secure a
12 | really favorable deal.

13 | 213. On June 21, 2013, using coded language in a telephone
14 | conversation, defendant FELIX attempted to persuade defendant
15 | GAITAN not to hold a Canta Ranas Organization meeting at
16 | defendant FELIX's residence because defendant FELIX was storing
17 | defendant GAITAN's firearms and receiving taxes at his
18 | residence, and did not want to attract law enforcement's
19 | attention to the residence.

20 | 214. On June 22, 2013, using coded language in a telephone
21 | conversation, defendant FELIX told defendant GAITAN to come to
22 | his residence so that defendant GAITAN could see the layout of
23 | defendant FELIX's backyard for the purpose of holding a Canta
24 | Ranas Organization meeting.

25 | 215. On June 22, 2013, defendant GAITAN went to defendant
26 | FELIX's residence in Whittier, California, to see if the layout
27 | was appropriate for a Canta Ranas Organization meeting
28 | defendants LOZA and GAITAN were conducting later that day.

216. On June 22, 2013, using coded language in a telephone conversation with defendant GAITAN, defendant S. JAIMEZ agreed to call defendant PIZANO to confirm his attendance at the Canta Ranas Organization meeting.

217. On June 22, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant RODRIGUEZ to have defendant NILA call him regarding the Canta Ranas Organization meeting.

218. On June 22, 2013, using coded language in a telephone conversation, defendant LOZA asked defendant RODRIGUEZ about the whereabouts of her son, defendant NILA, because defendant NILA needed to attend the Canta Ranas Organization meeting where people were going to speak "bad" about him, so he could "explain himself."

219. On June 22, 2013, using coded language in a telephone conversation, defendant NILA told defendant LOZA that he and defendant RODRIGUEZ were en route to the Canta Ranas Organization meeting.

220. On June 22, 2013, using coded language in a telephone conversation, defendant RODRIGUEZ asked defendant NILA if he was ready to be picked up from the Canta Ranas Organization meeting, and defendant NILA said he was.

221. On June 22, 2013, in Whittier, California, defendants LOZA and GAITAN held a Canta Ranas Organization meeting, during which defendant LOZA ordered younger and subordinate gang members to assault other members who were in bad standing.

222. On June 22, 2013, in response to defendant GAITAN's text message identifying its location, defendant A. JAIMEZ

52

attended the Canta Ranas Organization meeting in Whittier, California, which was arranged by defendants LOZA and GAITAN.

223. On June 22, 2013, in Whittier, California, defendant ESPINOZA attended the Canta Ranas Organization meeting that was arranged by defendants LOZA and GAITAN.

224. On June 22, 2013, defendant S. JAIMEZ attended the Canta Ranas Organization meeting in Whittier, California, which was arranged by defendants GAITAN and LOZA.

225. On June 22, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant A. GAITAN that defendants A. GONZALEZ, ANTOLIN, and VIRAMONTES had not attended the Canta Ranas Organization meeting that day and would be beaten for skipping the meeting.

226. On June 22, 2013, using coded language in a series of text messages, defendant GAITAN told defendant VILLALBA that he would get magazines for defendant VILLABA's Glock pistol after defendant VILLALBA identified for him the model of the Glock in his (defendant VILLALBA's) possession.

227. On June 22, 2013, using coded language in an in-person visit at Pelican Bay State Prison, defendant OLIVAS confirmed to Mexican Mafia D.G. that defendant LOZA had provided her with $200 to help pay for her trip to see Mexican Mafia D.G.

228. On June 22, 2013, using coded language in a telephone conversation, defendant ALATORRE agreed to meet with defendant GAITAN to pay taxes he owed.

229. On June 23, 2013, using coded language in an in-person visit at Pelican Bay State Prison, Mexican Mafia D.G. instructed defendant OLIVAS (along with defendant LOZA, who was not

present) to relay the message to an individual that the person

did not have permission to collect taxes from street gangs or to

conduct any criminal activities under Mexican Mafia D.G.'s

authority/name, to which defendant OLIVAS agreed.

230. On June 23, 2013, using coded language in an in-person

visit at Pelican Bay State Prison, Mexican Mafia D.G. instructed

defendant OLIVAS to tell defendant LOZA not to give defendant

GAVALDON, SR. any money collected by the Canta Ranas

Organization, to which defendant OLIVAS agreed.

231. On June 24, 2013, using coded language in a telephone

conversation, defendant ALATORRE told defendant GAITAN that he

would come to defendant GAITAN's house to pay him $100 in taxes.

232. On June 24, 2013, using coded language in a telephone

conversation, defendant BOWERS told defendant GAITAN that he

(defendant BOWERS) had assaulted an individual when he collected

taxes from the individual because the person had disrespected

the neighborhood; defendant GAITAN told defendant BOWERS to give

him the money.

233. On June 24, 2013, using coded language in a telephone

conversation, defendant LOZA told defendant GAITAN that he went

to defendant MENDOZA's mother's residence to collect payment for

the methamphetamine which had been seized from defendant MENDOZA

by law enforcement.

234. On June 24, 2013, using coded language in a telephone

conversation, defendant N. JAIMEZ told defendant GAITAN that he

would help collect taxes from defendant PIZANO.

235. On June 24, 2013, using coded language in a telephone

conversation, defendant GAITAN provided defendant N. JAIMEZ with

1  defendant GOULET's telephone number and asked him to help

2  defendant GOULET collect taxes from the Casa Blanca street gang

3  in Riverside, California, which defendant N. JAIMEZ agreed to

4  do.

5    236. On June 24, 2013, using coded language in a telephone

6  conversation, defendant BOWERS told defendant GAITAN that he

7  (defendant BOWERS) had paid a debt to the Brown Brotherhood

8  street gang on behalf of defendant R. CONTRERAS, and that when

9  defendant BOWERS went to collect the money back from defendant

10  R. CONTRERAS, defendant BOWERS had assaulted defendant R.

11  CONTRERAS for not paying him back.

12    237. On June 26, 2013, using coded language in a telephone

13  conversation, defendants GAITAN and S. JAIMEZ talked about

14  defendant A. JAIMEZ going to Riverside, California, to help

15  defendant GOULET collect taxes from the Casa Blanca gang.

16    238. On June 26, 2013, defendant A. JAIMEZ went to

17  Riverside, California, to meet with defendant GOULET to discuss

18  the collection of taxes from the Casa Blanca gang.

19    239. On June 26, 2013, using coded language in a series of

20  text messages, defendants GAITAN and MORENO agreed to meet in

21  order for defendant MORENO to purchase approximately 3.5 grams

22  of methamphetamine from defendant GAITAN.

23    240. On June 27, 2013, using coded language in a telephone

24  conversation, defendant A. JAIMEZ confirmed with defendant

25  GAITAN that he (defendant A. JAIMEZ) had met with defendant

26  GOULET in Riverside, California, regarding the collection of

27  taxes from the Casa Blanca gang.

28

241. On June 27, 2013, using coded language in a telephone conversation, defendant A. JAIMEZ agreed to help defendant GAITAN collect taxes from Canta Ranas Organization members and to beat them up if they were unable or unwilling to pay.

242. On June 27, 2013, using coded language in a telephone conversation, defendant HIGUERA asked defendant GAITAN to sell him half-an-ounce of methamphetamine for $250, which he reminded defendant GAITAN had been the price paid in a prior transaction.

243. On June 27, 2013, using coded language in a series of text messages, defendant GAITAN asked defendant ANTOLIN for help in collecting $210 in outstanding tax payments owed by an individual.

244. On June 29, 2013, using coded language in a series of text messages, defendant MORENO asked defendant GAITAN for 3.5 grams of methamphetamine.

245. On June 29, 2013, defendant MORENO went to defendant GAITAN's residence to pick up methamphetamine.

246. On June 29, 2013, defendant GAITAN distributed approximately 3.5 grams of methamphetamine to defendant MORENO.

247. On June 29, 2013, using coded language in a telephone conversation, defendant A. JAIMEZ told defendant GAITAN that he wanted to assault defendants VIRAMONTES and A. GONZALEZ for their transgressions against the Canta Ranas Organization, which included not paying their share of taxes.

248. On June 29, 2013, using coded language in a telephone conversation, defendant GOULET advised defendant GAITAN that he would pay the money he owed defendant GAITAN as soon as he completed two additional drug sales.

1      249. On June 29, 2013, using coded language in a telephone

2  conversation, defendant GOULET told defendant GAITAN that he had

3  $140 to give to defendant GAITAN, and that another individual

4  owed him (defendant GOULET) $200, to which defendant GAITAN

5  responded that defendant GOULET owed about $1,855; defendant

6  GOULET then told defendant GAITAN that he had five grams of

7  methamphetamine to sell.

8      250. On June 29, 2013, using coded language in a telephone

9  conversation, defendant GOULET confirmed to defendant GAITAN

10  that he was going to meet with a Casa Blanca gang member to

11  discuss collecting taxes from that gang, and asked defendant

12  GAITAN if he should bring a firearm when doing so.

13      251. On June 29, 2013, using coded language in a telephone

14  conversation, defendant LOZA called defendant VANDOREN's brother

15  in an attempt to locate defendant VANDOREN to collect payment

16  for the methamphetamine law enforcement had seized from

17  defendant VANDOREN.

18      252. On June 30, 2013, using coded language in a telephone

19  conversation, defendant LOZA called an unindicted co-conspirator

20  to get an update on efforts to collect the taxes owed by

21  defendants MENDOZA and MORALES.

22      253. On June 30, 2013, using coded language in a telephone

23  conversation, defendant LOZA called defendant VANDOREN and

24  instructed him to pay the money defendant VANDOREN owed for the

25  methamphetamine seized by law enforcement.

26      254. On June 30, 2013, using coded language in a telephone

27  conversation, defendant VANDOREN told defendant LOZA that he had

28  fled to Maine because he believed law enforcement was onto

1  defendants LOZA and GAITAN, as defendant VANDOREN had been

2  pulled over only ten minutes after obtaining methamphetamine

3  from defendant GAITAN.

4       255. On June 30, 2013, using coded language in a telephone

5  conversation, defendant VANDOREN told defendant LOZA that he

6  would send defendant LOZA the money he owed for the

7  methamphetamine seized by law enforcement from money he earned

8  working on a fishing boat.

9       256. On June 30, 2013, using coded language in a recorded

10 voicemail, defendant BOWERS told defendant GAITAN that half of

11 the $120 in taxes which he (defendant BOWERS) had given to

12 defendant GAITAN was from a particular drug dealer.

13      257. On June 30, 2013, using coded language in a telephone

14 conversation, defendant GOULET informed defendant GAITAN that he

15 had met with the Casa Blanca gang member who had gotten him

16 "into the hood" and had told the individual that defendant

17 GOULET was collecting taxes on behalf of Mexican Mafia D.G., to

18 which defendant GAITAN reiterated that defendant GOULET had to

19 make sure that the Casa Blanca gang understood that the

20 collections were on behalf of Mexican Mafia D.G.

21      258. On June 30, 2013, using coded language in a telephone

22 conversation, defendant HIGUERA told defendant GAITAN that he

23 (defendant HIGUERA) had a 17-round 9mm magazine which he wanted

24 to give to defendant GAITAN so that it could then be given to

25 another unindicted co-conspirator.

26      259. On June 30, 2013, using coded language in a telephone

27 conversation, defendant GAITAN told defendant HIGUERA to put

28 defendant HIGUERA's and defendant GOULET's tax payments in his

(defendant GAITAN's) mailbox and that he would give defendant
HIGUERA more methamphetamine if he returned home in time.

260. On June 30, 2013, using coded language in a text
message, defendant LOZA instructed an individual to tell
defendant VANDOREN to stop hiding and to pay the money he owed
for the methamphetamine seized by law enforcement.

261. On July 1, 2013, using coded language in a text
message, defendant GOULET told defendant GAITAN that he was
meeting with a Casa Blanca gang member to discuss the taxing of
that gang.

262. On July 1, 2013, using coded language in a telephone
conversation, defendants LOZA and MENDOZA discussed how
defendant LOZA had been to defendant MENDOZA's residence seven
days in a row in an attempt to talk to defendant MENDOZA about
the money he owed due to law enforcement seizing methamphetamine
from defendant MENDOZA, with defendant MENDOZA explaining that
he was staying away from his residence due to his perception
that law enforcement was targeting the house because he was
always getting pulled over by law enforcement after leaving it.

263. On July 1, 2013, using coded language in a telephone
conversation, defendants GAITAN and CASILLAS talked about the
collection of taxes from two drug dealers operating in Canta
Ranas Organization territory, and the need for defendant
CASILLAS to deliver the money to defendant GAITAN; defendants
GAITAN and CASILLAS also talked about re-supplying both dealers
and about whether they could sell a whole ounce of
methamphetamine in time.

264. On July 1, 2013, using coded language in a telephone

conversation, defendant A. GAITAN told defendant GAITAN that she needed to bring methamphetamine to defendant D. CONTRERAS.

265. On July 2, 2013, using coded language in a series of text messages, defendant D. CONTRERAS told defendant GAITAN that she had provided a drug dealer with methamphetamine and that the individual might need more methamphetamine.

266. On July 2, 2013, using coded language in a telephone conversation, defendant GOULET told defendant GAITAN that he had fixed a firearm, which defendant GAITAN agreed to accept and apply to defendant GOULET's "tab" of what he owed defendant GAITAN.

267. On July 2, 2013, at a location within Canta Ranas Organization territory, defendant MORALES met with defendants LOZA and CASILLAS to discuss CR-related issues.

268. On July 3, 2013, using coded language in a text message, defendant MORALES reported to defendant LOZA that rival Las Tres Palmas gang members had assaulted unidentified CR gang members within Canta Ranas Organization territory.

269. On July 3, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant NILA that he had found an individual who would sell a Glock 19 pistol to defendant NILA in exchange for defendant NILA's shotgun and $350.

270. On July 4, 2013, using coded language in a telephone conversation, defendant D. CONTRERAS told defendant GAITAN that she would pay him for methamphetamine, asked for an additional half-an-ounce to an ounce of methamphetamine, and discussed with defendant GAITAN her drug customers' comments about the quality

60

1  of defendant GAITAN's methamphetamine.

2       271. On July 4, 2013, using coded language in a telephone

3  conversation, defendant GOULET told defendant GAITAN that he had

4  approximately $420 to pay defendant GAITAN for additional

5  methamphetamine.

6       272. On July 4, 2013, using coded language in a telephone

7  conversation, defendants GAITAN and GOULET talked about a

8  firearm that defendant GAITAN needed defendant GOULET to fix for

9  him, and also about defendant GOULET getting magazines for a

10  Glock 36 and a .40 caliber Smith & Wesson firearm.

11      273. On July 4, 2013, using coded language in a telephone

12  conversation, defendant LOZA asked an unindicted co-conspirator

13  for an update on his efforts to collect taxes from the Casa

14  Blanca gang in Riverside, California.

15      274. On July 4, 2013, using coded language in a text

16  message, defendant HIGUERA relayed to defendant GAITAN that

17  defendant GOULET had money for defendant GAITAN, and that

18  defendant GOULET wanted more methamphetamine.

19      275. On July 5, 2013, using coded language in a series of

20  text messages, defendant MORENO told defendant GAITAN that he

21  needed more methamphetamine and that he would go to defendant

22  GAITAN's residence to pick it up.

23      276. On July 5, 2013, defendant GOULET possessed a .38

24  caliber stainless steel revolver, multiple rounds of ammunition,

25  and drug paraphernalia.

26      277. On July 5, 2013, using coded language in a telephone

27  conversation, defendant HIGUERA told defendant GAITAN that he

28  had heard that law enforcement was in the process of executing a

search warrant at his residence, that he was worried because there was methamphetamine and a firearm in the house, and that he could be linked to the residence because it was his parole address of record; defendant HIGUERA stated that he had tried to contact defendant GOULET, who lived there with him, but had not heard back.

278. On July 5, 2013, using coded language in a telephone conversation, defendant GAITAN instructed defendant A. GAITAN to give defendant D. CONTRERAS an ounce of methamphetamine.

279. On July 5, 2013, using coded language in a telephone conversation, defendant A. GAITAN told defendant GAITAN that she had retrieved a firearm and money for narcotics from their mailbox.

280. On July 6, 2013, using coded language in a telephone conversation, defendant ALVAREZ asked defendant GAITAN if defendant GAITAN was selling the firearm that defendant ALVAREZ had provided, to which defendant GAITAN responded that they had tried, but had been unable, to sell it to generate money to purchase more firearms; defendant ALVAREZ asked if the Canta Ranas Organization was still looking for more firearms, to which defendant GAITAN responded in the affirmative; defendant GAITAN told defendant ALVAREZ that CR was using the firearm defendant ALVAREZ had provided.

281. On July 6, 2013, using coded language in a telephone conversation, defendant LOZA instructed defendant ALVAREZ to bring him a better firearm the next time he came to the Whittier, California area.

282. On July 6, 2013, using coded language in a telephone

conversation, defendant LOZA instructed defendant ALVAREZ to provide him with the telephone number of a drug dealer, because that individual and another person owed $3,000.

283. On July 7, 2013, using coded language in a telephone conversation, defendant HIGUERA told defendant GAITAN that his methamphetamine sales would go smoother now that he was staying in Whittier, California, instead of Riverside, California.

284. On July 7, 2013, defendant FELIX called defendant GAITAN and then gave the telephone to defendant R. CONTRERAS so that defendant R. CONTRERAS could order methamphetamine from, and also arrange for the payment of taxes to, defendant GAITAN.

285. On July 7, 2013, using coded language in a telephone conversation, defendant R. CONTRERAS asked defendant GAITAN for more methamphetamine so that defendant R. CONTRERAS could start selling methamphetamine again.

286. On July 7, 2013, using coded language in a series of text messages, defendant GAITAN told defendant OROZCO that he wanted to obtain flash bang grenades to help the Canta Ranas Organization collect taxes; defendant OROZCO stated that defendant GAITAN could buy some flash bang grenades from his brother and provided his brother's telephone number to defendant GAITAN.

287. On July 8, 2013, using coded language in a telephone conversation, defendant GAITAN instructed defendant A. GAITAN to collect money for narcotics from defendant DE LA PAZ, who was at their residence.

288. On July 8, 2013, using coded language in a series of text messages, defendant FELIX sent defendant GAITAN personal

1  identifying information belonging to defendant GOULET and

2  another individual for the purpose of committing fraud which

3  would generate proceeds for the Canta Ranas Organization.

4      289. On July 9, 2013, using coded language in a telephone

5  conversation, defendant HIGUERA told defendant GAITAN that he

6  and an unindicted co-conspirator had buried firearms and

7  ammunition at a residence in Whittier, California, because they

8  feared that law enforcement would be serving a search warrant

9  there.

10     290. On July 9, 2013, using coded language in a telephone

11 conversation, defendant HIGUERA told defendant GAITAN that he

12 had approximately a quarter-ounce of methamphetamine in his

13 possession.

14     291. On July 9, 2013, using coded language in a series of

15 text messages, defendant GAVALDON, JR. asked defendant GAITAN

16 for assistance in finding someone who would assault an inmate in

17 the Riverside County Jail, and provided the inmate's identifying

18 information.

19     292. On July 9, 2013, using coded language in a text

20 message, defendant NILA asked defendant GAITAN if he knew of any

21 firearms for sale.

22     293. On July 10, 2013, using coded language in a text

23 message, defendant NILA asked defendant GAITAN if the .38

24 caliber and .40 caliber firearms were still for sale, and

25 defendant GAITAN told defendant NILA that they were both no

26 longer available.

27     294. On July 10, 2013, using coded language in a telephone

28 conversation, defendants GAITAN and HIGUERA discussed the $250

64

1  defendant HIGUERA owed defendant GAITAN for narcotics defendant
2  GAITAN had "fronted" to defendant HIGUERA; defendant HIGUERA
3  asked for an additional half-ounce of methamphetamine, and
4  defendant GAITAN said he would see if he could obtain more
5  methamphetamine.

6      295. On July 10, 2013, using coded language in a telephone
7  conversation, defendants GAITAN and HIGUERA talked about
8  defendant HIGUERA putting an unindicted co-conspirator in
9  contact with Casa Blanca gang members so that the unindicted co-
10  conspirator could collect taxes from the gang while defendant
11  GOULET was in custody.

12      296. On July 10, 2013, using coded language in a telephone
13  conversation, defendant D. CONTRERAS told defendant GAITAN that
14  she would pay him the following day for the methamphetamine
15  defendant GAITAN had distributed to her.

16      297. On July 11, 2013, using coded language in a telephone
17  conversation, defendant HIGUERA told defendant GAITAN that he
18  had $300 to give to defendant GAITAN for another half-ounce of
19  methamphetamine, and that he was going to use the profit from
20  the sales of that methamphetamine to help pay defendant GOULET's
21  debt (arising from law enforcement's seizure of narcotics that
22  were in defendant GOULET's possession).

23      298. On July 11, 2013, using coded language in a telephone
24  conversation, defendant A. GAITAN told defendant GAITAN that he
25  needed to get more methamphetamine because defendant GAITAN
26  should not keep his drug customers waiting.

27
28

299. On July 11, 2013, using coded language in a telephone conversation, defendant D. CONTRERAS asked defendant GAITAN when defendant GAITAN would have more methamphetamine.

300. On July 11, 2013, using coded language in a telephone conversation, defendant GAITAN told defendant D. CONTRERAS to check with defendant A. GAITAN later in the evening to see if defendant GAITAN had obtained additional methamphetamine.

301.  On July 11, 2013, using coded language in a series of text messages, defendant GAITAN asked defendant VASQUEZ to bring one-half pound of methamphetamine to defendant GAITAN's residence, to which defendant VASQUEZ agreed.

302. On July 11, 2013, using coded language in a series of text messages, defendant HIGUERA relayed to defendant GAITAN that there may be a situation with an unidentified individual at defendant HIGUERA's sister's house, and that defendant GOULET wants Canta Ranas Organization members to be on standby, with firearms, in case the individual shows up at the house.

303. On July 11, 2013, using coded language in a telephone conversation, defendant BOWERS asked defendant GAITAN for methamphetamine to sell.

304. On July 11, 2013, using coded language in a telephone conversation, defendant GAITAN told an unindicted co-conspirator that defendant A. GAITAN would tell the individual via text message to come to their residence and get methamphetamine if there was any available.

305. On July 11, 2013, defendant VASQUEZ transported narcotics for distribution to defendant GAITAN.

306. On July 11, 2013, defendants VASQUEZ and PANTALEON

1  conspired to murder an individual who, unbeknownst to them, was
2  an undercover law enforcement officer.

3      307. On July 11, 2013, using coded language in a telephone
4  conversation, defendant PIZANO asked an unindicted co-
5  conspirator to tell defendant LOZA that he would make his tax
6  payment by the end of the day.

7      308. On July 12, 2013, using coded language in a telephone
8  conversation, defendant A. GAITAN asked defendant GAITAN if he
9  needed her to meet with defendant VASQUEZ to obtain additional
10 methamphetamine.

11     309. On July 12, 2013, using coded language in a telephone
12 call, defendant GAITAN told defendant A. GAITAN that defendant
13 VASQUEZ would bring them more methamphetamine later in the day.

14     310. On July 12, 2013, using coded language in a series of
15 text messages, defendant A. GAITAN told defendant GAITAN that he
16 was going to lose business if he did not obtain more
17 methamphetamine, and offered to get it from defendant VASQUEZ.

18     311. On July 12, 2013, using coded language in a series of
19 text messages, defendant VASQUEZ informed defendant GAITAN that
20 he would deliver methamphetamine to defendant GAITAN that day.

21     312. On July 12, 2013, using coded language in a series of
22 text messages, defendant GAITAN instructed defendant VASQUEZ to
23 give a half pound of methamphetamine to defendant A. GAITAN, who
24 would, in turn, provide payment to defendant VASQUEZ.

25     313. On July 12, 2013, using coded language in a series of
26 text messages, defendant GAITAN told defendant HIGUERA that he
27 had was preparing defendant HIGUERA's share of methamphetamine.

28     314. On July 13, 2013, using coded language in a telephone

1   conversation, defendant BOWERS asked defendant GAITAN for

2   methamphetamine to sell.

3       315. On July 13, 2013, using coded language in a telephone

4   conversation, defendant ESPINOZA told defendant GAITAN that he

5   had assaulted defendant A. GONZALEZ, per defendant GAITAN's

6   instructions.

7       316. On July 13, 2013, using coded language in a series of

8   telephone conversations, defendant HIGUERA, after advising

9   defendant GAITAN that rival Whittier 13 gang members were

10  targeting his residence, asked defendant GAITAN if he could

11  borrow a firearm, to which defendant GAITAN responded by

12  directing defendant HIGUERA to go to defendant GAITAN's

13  residence to pick up a firearm.

14      317. On July 13, 2013, at his residence, defendant GAITAN

15  gave defendant HIGUERA a firearm so that defendant HIGUERA could

16  protect himself from rival Whittier 13 gang members.

17      318. On July 13, 2013, using coded language in a telephone

18  conversation, defendant ALVAREZ told defendant GAITAN that he

19  would mail more tax payments to defendant FELIX's residence the

20  following week.

21      319. On July 13, 2013, defendants LOZA, GAITAN, and VASQUEZ

22  met at defendant GAITAN's residence, where defendant VASQUEZ

23  told the others that he had shot at a vehicle which had been

24  following him.

25      320. On July 14, 2013, using coded language in a telephone

26  conversation, defendant VASQUEZ directed defendant LOZA to go to

27  his residence, because he was facing a "life and death"

28  situation that was related to the shooting he had told defendant

1  LOZA about the day before.

2      321. On July 14, 2013, defendants LOZA and VASQUEZ met at

3  defendant VASQUEZ's residence to discuss the shooting involving

4  defendant VASQUEZ.

5      322. On July 14, 2013, using coded language in a telephone

6  conversation, defendant GAITAN instructed defendant D. CONTRERAS

7  to get rid of narcotics and drug paraphernalia in her

8  possession.

9      323. On July 15, 2013, defendant VILLALBA possessed a

10  Palmetto State Armory AR-15 .223 caliber semi-automatic rifle

11  with four high-capacity 30-round magazines and two 10-round

12  magazines, a Ruger .22 caliber semi-automatic rifle with two

13  magazines, a Plainfield Machining 30 caliber semi-automatic

14  rifle with two magazines, a Norinco 7.62x39 semi-automatic rifle

15  with one high-capacity 50-round magazine, a Smith & Wesson 12-

16  gauge pump action shotgun, an American Gun Company double-barrel

17  12-gauge breach loader shotgun, a Ruger 9mm semi-automatic

18  pistol with three 10-round magazines, a Phoenix Arms .25 caliber

19  semi-automatic pistol with one magazine, a Glock .45 caliber

20  semi-automatic pistol with two magazines, a Smith & Wesson .357

21  caliber six shot revolver with an obliterated serial number, 250

22  rounds of Lellier & Bellot .25 caliber ammunition, 149 rounds of

23  UMC 9mm ammunition, 110 rounds of Centerfire 7.62x39mm

24  ammunition, 100 rounds of PMC .25 caliber ammunition, fifty

25  rounds of Blazer .25 caliber ammunition, forty-two rounds of

26  Federal .223 caliber ammunition, forty rounds of Wolf 7.62x39mm

27  ammunition, twenty-two rounds of Lake City Army .30 caliber

28  ammunition, one 12-gauge shotgun round, one pistol holster, one

plastic rifle stock, four plastic hand guards belonging to an AR-15 rifle, two plastic collapsible AR-15 rifle stocks, and one plastic AR-15 rifle grip handle.

324. On July 15, 2013, using coded language in a telephone conversation, defendant VILLALBA told defendant GAITAN that law enforcement had executed a search warrant at his residence, during which they had seized all of the firearms and ammunition from his safe, and that he was nervous because he could not afford to incur any more felony convictions.

325. On July 16, 2013, using coded language in a telephone conversation, defendant VILLALBA told defendant GAITAN that he believed an informant had given information to the police.

326. On July 23, 2013, using coded language in a telephone conversation, defendant OROZCO warned defendant GAITAN that an unidentified male from the rival Whittier Varrio Locos gang was trying to collect taxes from a Brown Brotherhood gang member, and relayed that he (defendant OROZCO) had given the order to members of the Brown Brotherhood gang not to pay any money to the unidentified male.

327. On July 24, 2013, using coded language in a telephone conversation, defendant R. CONTRERAS told GAITAN that he was ready to pay his outstanding drug debt, and defendant GAITAN told defendant R. CONTRERAS that he would put him (defendant R. CONTRERAS) in touch with an unidentified co-conspirator to obtain more methamphetamine.

328. On July 24, 2013, using coded language in a telephone conversation, defendant OROZCO told defendant LOZA that they should shoot an unidentified male on sight for trying to collect

1   taxes in Canta Ranas Organization territory.

2       329. On July 24, 2013, using coded language in a telephone

3   conversation, defendant GAITAN told defendant R. CONTRERAS to go

4   to a Del Taco restaurant to meet with an unidentified co-

5   conspirator to purchase methamphetamine.

6       330. On July 24, 2013, using coded language in a series of

7   text messages, defendant ALVAREZ confirmed to defendant GAITAN

8   that he had sent tax payments to defendant GAITAN which were

9   intended for defendant LOZA.

10      331. On July 31 2013, using coded language in a telephone

11  conversation, defendant M. SALINAS told defendant GAITAN that he

12  could help organize and keep younger CR gang members in line

13  with the goals of the gang, but needed a cellular telephone to

14  do so.

15      332. On August 1, 2013, using coded language in a telephone

16  conversation, defendant GAITAN instructed defendant ESPINOZA to

17  collect a $100 drug debt owed by defendant BOWERS.

18      333. On August 3, 2013, using coded language in a telephone

19  conversation, defendant GAITAN asked defendant LOZA if defendant

20  M. SALINAS and other unindicted co-conspirators were authorized

21  to assault an individual in prison, to which defendant LOZA

22  confirmed that they were.

23      334. On August 7, 2013, using coded language in a telephone

24  conversation, defendants GAITAN and FELIX talked about the .22

25  firearm defendant ANTOLIN had, with defendant FELIX asking why

26  defendant ANTOLIN would have the firearm in his possession if he

27  knew that there had been a law enforcement "raid" the day prior;

28  defendants GAITAN and FELIX also talked about a recent

71

1  indictment involving the La Familia Cartel, the Mexican Mafia,

2  and the Florencia-13 criminal street gang.

3      335. On August 7, 2013, using coded language in a text

4  message, defendant MORALES told defendant LOZA that he had money

5  to pay off a drug debt, and asked defendant LOZA for more

6  methamphetamine.

7      336. On August 10, 2013, at Quiet Canyon in Montebello,

8  California, defendants ESPINOZA and SOTELLO conspired to murder

9  a member of the Mongols outlaw motorcycle gang.

10     337. On August 10, 2013, defendant SOTELLO stabbed a

11  Mongols member who was assaulting defendant ESPINOZA.

12     338. On August 12, 2013, using coded language in a series

13  of text messages, defendant HIGUERA asked defendant GAITAN to

14  help him obtain half-an-ounce of methamphetamine on credit.

15     339. On August 14, 2013, using coded language in a

16  telephone conversation, defendant GOULET told defendant GAITAN

17  that he had fixed defendant GAITAN's firearm and had fired it

18  multiple times to make sure that it was working; defendant

19  GOULET stated that now that his debt was paid, he was trying to

20  save money to purchase a firearm to be collectively used by the

21  Canta Ranas Organization, and that he would engrave the firearm

22  with the name of a member of the gang who had died during an

23  encounter with law enforcement.

24     340. On August 14, 2013, using coded language in a

25  telephone conversation, defendant GOULET told defendant GAITAN

26  that defendant BOWERS had traveled with him and others to

27  collect taxes from the Casa Blanca gang.

28     341. On August 15, 2013, defendant ANTOLIN possessed a .25

1  caliber semi-automatic pistol, five .25 caliber brass bullets, a

2  digital scale, drug paraphernalia, and CR gang paraphernalia.

3      342. On August 17, 2013, using coded language in a series

4  of text messages, defendant S. JAIMEZ asked defendant GAITAN if

5  he had a .40 caliber firearm because defendant S. JAIMEZ had a

6  customer who wanted to purchase one, to which defendant GAITAN

7  responded that he did not have that gun anymore.

8      343. On August 18, 2013, defendant CASILLAS possessed a

9  loaded Smith and Wesson semi-automatic pistol and a magazine

10  with six .40 caliber ammunition rounds.

11      344. On August 20, 2013, at a convenience store in Canta

12  Ranas Organization territory, defendant BOWERS, while stealing

13  items from the store, told the store owner that he was

14  collecting "gangster taxes" on behalf of the Canta Ranas

15  Organization.

16      345. On August 30, 2013, using coded language in a

17  telephone conversation, defendant CASILLAS and an individual

18  talked about defendant CASILLAS borrowing a credit card embosser

19  for the purpose of committing access device fraud.

20      346. On September 2, 2013, using coded language in a

21  telephone conversation, defendant CASILLAS and two other

22  individuals talked about defendant CASILLAS obtaining and

23  mailing fraudulent credit cards and/or credit card numbers.

24      347. On September 2, 2013, using coded language in a

25  telephone conversation, defendant CASILLAS told defendant LOZA

26  that he had just been assaulted by rival Los Tres Palmas gang

27  members, and that the Canta Ranas Organization should retaliate.

28      348. On September 11, 2013, using coded language in a

73

1   telephone conversation, defendant CASILLAS discussed kidnaping

2   an individual who had taken money from the Canta Ranas

3   Organization, and noted that defendants LOZA and GAITAN wanted

4   to "get at her."

5       349. On September 11, 2013, using coded language in a

6   telephone conversation, defendants LOZA and CASILLAS talked

7   about defendant CASILLAS selling narcotics and owing taxes to

8   defendant LOZA, who was collecting on behalf of Mexican Mafia

9   D.G.

10      350. On September 21, 2013, defendant CASILLAS possessed a

11  stolen California Identification Card and marijuana.

12      351. On September 25, 2013, in Whittier, California,

13  defendant MURIETTA possessed approximately 3.6 grams of

14  methamphetamine and a digital scale.

15      352. On October 8, 2013, in Whittier, California, defendant

16  GOULET and an unidentified co-conspirator entered the residence

17  of victims D.T. and C.T., tied up the victims at gunpoint, and

18  stole computers and other items.

19      353. On October 9, 2013, in a stolen vehicle in Riverside,

20  California, defendant GOULET possessed a Glock 9mm handgun,

21  fifteen rounds of 9mm ammunition, and property from victims D.T.

22  and C.T.

23      354. On October 26, 2013, using coded language in written

24  correspondence, defendant E. HOLGUIN, while in custody, asked an

25  unindicted co-conspirator to send a Facebook message to another

26  individual with the contact information for defendant E.

27  HOLGUIN'S narcotics supplier, and to let that individual know

28  the "hookup" is coming from "Boxer from CR."

355. On November 5, 2013, defendant A. GONZALEZ ordered victim L.G. at gunpoint to drive A. GONZALEZ to defendant ANTOLIN's residence located in Whittier, California.

356. On November 5, 2013, defendant MORALES ordered defendant A. GONZALEZ to return a vehicle which defendant A. GONZALEZ had carjacked.

357. On November 9, 2013, in Victorville, California, defendant PANTALEON beat unconscious an unidentified male who said, "Fuck South Central," and then fled the scene, while throwing away a knife he had in his possession.

358. On November 11, 2013, using coded language in a telephone conversation, defendant PANTALEON told an individual that unidentified African-Americans needed to be assaulted or killed due to them robbing a Mexican woman in Whittier, California.

359. On November 15, 2013, defendant VASQUEZ, who had been advised that defendant PANTALEON had been pulled over by law enforcement, went to defendant PANTALEON's residence to discuss the incident.

360. On November 23, 2013, using coded language in written correspondence, defendant E. HOLGUIN, while in custody, asked defendant F. HOLGUIN to help an unindicted co-conspirator obtain the name and number of defendant E. HOLGUIN'S narcotics supplier, thereby facilitating the Canta Ranas Organization's narcotics sales.

361. On November 30, 2013, using coded language in a telephone conversation, defendant VASQUEZ, after being advised of the location where in Torrance, California, where five

1    members of a rival street gang had been spotted, stated that he
2    would proceed immediately to that location.

3        362. On November 30, 2013, using coded language in a
4    telephone conversation, defendant VASQUEZ told the unindicted
5    co-conspirator that the Torrance police were nearby and that he
6    (defendant VASQUEZ) had a firearm in the vehicle with him.

7        363. On December 8, 2013, using coded language in written
8    correspondence, defendant OLIVAS relayed to Mexican Mafia D.G.
9    that, consistent with his instructions to her, she had ordered
10   an individual to stop using Mexican Mafia D.G.'s name/authority
11   to collect taxes from gang members or other unidentified
12   individuals.

13       364. On December 9, 2013, using coded language in a text
14   message, defendant ALVAREZ discussed the potential sale of his
15   .380 caliber gun with defendant NILA.

16       365. On December 11, 2013, at his residence, defendant
17   ALVAREZ possessed a loaded Smith & Wesson .40 caliber semi-
18   automatic handgun, a loaded Davis Industries .380 caliber semi-
19   automatic handgun, a loaded Ruger Police Service Six .357 magnum
20   revolver, a speed loader for a revolver, a loaded Smith & Wesson
21   .40 caliber magazine, a loaded AK-47 7.62x39 caliber magazine,
22   two magazines for a .380 semiautomatic handgun, one of which was
23   loaded, five boxes of ammunition, and two ledgers documenting
24   the amount of taxes various street gangs owed and/or had paid to
25   the Mexican Mafia.

26       366. On January 14, 2014, in Whittier, California,
27   defendant HIGUERA possessed approximately 5.9 grams of
28   methamphetamine and a digital scale.

367. On January 24, 2014, in Canta Ranas Organization territory, defendant MORALES was shot at by rival Las Tres Palmas gang members.

368. On February 4, 2014, using coded language in written correspondence, defendant PEREZ told defendant RODRIGUEZ that Canta Ranas Organization members needed to assault rival Los Nietos gang members as retaliation for Los Nietos gang members shooting at the residence of defendant RODRIGUEZ.

369. On February 13, 2014, at defendant FELIX's residence in Whittier, California, defendants FELIX and GAITAN possessed a Glock 9mm Luger caliber semi-automatic pistol loaded with 10 hollow point rounds of ammunition, a Ruger .22 long rifle caliber semi-automatic pistol, a disassembled Lorcin L-22 .22 caliber long rifle semiautomatic pistol, two handgun magazines, two assault rifle magazines, and 196 rounds of .22 caliber ammunition.

370. On March 5, 2014, defendant SOTELLO possessed a loaded Smith & Wesson Airweight .38 caliber revolver.

371. On March 17, 2014, using coded language in a telephone conversation, defendant GAVALDON, SR. told defendant OLIVAS that he was not receiving money from Canta Ranas Organization members and asked that she apprise Mexican Mafia D.G. of this fact the next time she went to Pelican State Prison, to which defendant OLIVAS agreed.

372. On March 27, 2014, at her residence, defendant D. CONTRERAS possessed approximately 2.15 grams of methamphetamine, a digital scale, and $4,265 in cash.

373. On March 28, 2014, using coded language in a telephone

1  conversation, defendant GAVALDON, SR. told defendant OLIVAS that

2  Mexican Mafia D.G. needed to know that defendant LOZA was being

3  greedy and not following Mexican Mafia D.G.'s orders; defendant

4  OLIVAS stated that she would convey this information to Mexican

5  Mafia D.G.

6      374. On April 9, 2014, using coded language in a telephone

7  conversation, defendant GAVALDON, SR. reiterated to defendant

8  OLIVAS that he still was not receiving money even though his

9  brother, Mexican Mafia D.G., was a Mexican Mafia member.

10      375. On April 26, 2014, and April 27, 2014, using coded

11  language during in-person visits at Pelican Bay State Prison,

12  defendant OLIVAS told Mexican Mafia D.G. about defendant

13  GAVALDON, SR. not receiving money from the Canta Ranas

14  Organization while in prison, and about it not being right, to

15  which Mexican Mafia D.G. agreed.

16      376. On April 28, 2014, using coded language in a telephone

17  conversation, defendant OLIVAS told defendant GAVALDON, SR. that

18  she had visited Mexican Mafia D.G., and had relayed to him that

19  defendant GAVALDON, SR. was not receiving money, and that

20  consistent with Mexican Mafia D.G.'s instructions and to ensure

21  that defendant GAVALDON, SR. would receive money from the Canta

22  Ranas Organization, defendant OLIVAS was going to meet with

23  defendant LOZA to discuss the issue.

24      377. On April 28, 2014, using coded language in a telephone

25  conversation, defendant GAVALDON, SR. told defendant OLIVAS that

26  he hoped defendant LOZA and other Canta Ranas Organization

27  members would not act stupid and go against Mexican Mafia D.G.'s

28  orders.

378. On May 2, 2014, using coded language in a telephone conversation, defendant OLIVAS updated defendant GAVALDON, SR. that she would be speaking with defendant LOZA that Sunday regarding defendant GAVALDON, SR.'s desire to receive money from the Canta Ranas Organization.

379. On May 4, 2014, using Western Union, defendant OLIVAS wire transferred $50 that had been given to her by defendant LOZA to defendant GAVALDON, SR.'s prison account.

380. On May 4, 2014, using coded language in a telephone conversation, defendant GAVALDON, SR. confirmed to defendant OLIVAS that he had received the money she had sent him, and defendant OLIVAS told defendant GAVALDON, SR. that defendant LOZA would try to send defendant GAVALDON, SR. money every other month.

381. On June 2, 2014, in written correspondence to an individual, defendant GAVALDON, SR. reiterated his allegiance to the Mexican Mafia and to Mexican Mafia D.G., stating that he would always be aligned with it.

382. On June 25, 2014, in a vehicle in which he was a passenger, defendant D. GONZALES possessed a loaded Omega Burgo model NR 103 .22 short caliber revolver and approximately .83 grams of methamphetamine.

383. On June 27, 2014, at his residence, defendant D. GONZALES possessed a loaded Browning model Buck Mark .22 Long Rifle caliber handgun, four rounds of .22 caliber "Super X" ammunition, one round of 9mm hollow point ammunition, a digital scale, drug paraphernalia, and CR gang paraphernalia.

384. On July 30, 2014, defendant VIRAMONTES possessed a loaded Smith & Wesson Model 36 revolver.

385. On August 13, 2014, using coded language in written correspondence, defendant GAVALDON, SR. told an unindicted co-conspirator that Mexican Mafia D.G. had sent a message to the Canta Ranas Organization ordering it to pay money to defendant GAVALDON, SR., and that he was now receiving the money.

386. On August 13, 2014, using coded language in a telephone conversation, defendant HERNANDEZ told an unindicted co-conspirator that he had spoken with other unindicted co-conspirators and that their main objective was to help Mexican Mafia D.G. and defendant LOZA run the Canta Ranas Organization.

387. On August 15, 2014, using coded language in a telephone conversation, defendant HERNANDEZ instructed an unindicted co-conspirator to inform an unidentified individual that if he did not pay the taxes owed by a certain date, then the amount owed would double.

388. On August 20, 2014, using coded language in a telephone conversation, defendant HERNANDEZ asked an unindicted co-conspirator to relay to Mexican Mafia D.G. that he was in close contact with a Mexican Mafia member in the LACJ.

389. On September 4, 2014, defendant F. HOLGUIN possessed approximately 4.1 grams of a mixture and substance containing a detectable amount of heroin.

390. On October 10, 2014, defendant RODRIGUEZ deposited $100 into Mexican Mafia D.G.'s prison account.

391. On November 21, 2014, using coded language in an in-person meeting, defendant OLIVAS told an unindicted co-

1  conspirator not to pay taxes to a certain individual, and to

2  stay away from defendant HERNANDEZ because he was in bad

3  standing with Mexican Mafia D.G.

4      392. On January 3, 2015, on his Facebook account, defendant

5  DE LA PAZ listed his cellular telephone number and, using coded

6  language, posted that he was selling methamphetamine at a Motel

7  6 in Canta Ranas Organization territory.

8      393. On January 5, 2015, using coded language on his

9  Facebook account, defendant DE LA PAZ posted that he was selling

10 methamphetamine out of a Motel 6 in Canta Ranas Organization

11 territory.

12     394. On January 9, 2015, while at the Hollywood Roosevelt

13 Hotel in Los Angeles, California, defendant DE LA PAZ posted on

14 his Facebook account, "Chillin like a villain drug dealing."

15     395. On February 4, 2015, using coded language in a

16 telephone conversation, defendant HERNANDEZ told an individual

17 to tell defendant MARTINEZ that if he (defendant MARTINEZ) did

18 not pay the drug debt he owed defendant HERNANDEZ by a certain

19 date, he (defendant HERNANDEZ) would send someone to defendant

20 MARTINEZ's house to collect the payment.

21     396. On February 4, 2015, using coded language in a

22 telephone conversation, defendant HERNANDEZ complained to an

23 individual about defendant MARTINEZ's failure to pay the drug

24 debt, to which the individual responded that defendant MARTINEZ

25 had received other instructions from Mexican Mafia D.G.

26 regarding defendant MARTINEZ's payments to defendant HERNANDEZ.

27     397. On February 12, 2015, using coded language on his

28 Facebook account, defendant DE LA PAZ posted that he was selling

methamphetamine with defendant RUBIO at an unidentified motel.

398. On February 13, 2015, in a vehicle in which he was a passenger, defendant RUBIO possessed approximately 53.7 grams of methamphetamine.

399. Between February 20, 2015 and July 25, 2015, defendant ARIZMENDI deposited $485 into Mexican Mafia D.G.'s prison account.

400. On March 6, 2015, using coded language on his Facebook account, defendant DE LA PAZ posted that he was selling methamphetamine at a Motel 6 in Los Angeles, California.

401. On March 12, 2015, on his Facebook account, defendant DE LA PAZ listed his cellular telephone number and, using coded language, posted that he was selling methamphetamine.

402. On March 13, 2015, using coded language in a telephone conversation, defendant HERNANDEZ told an individual that he should not worry about a female who had threatened to call the police on this individual, as defendant HERNANDEZ would take care of her.

403. On March 16, 2015, using coded language in a telephone conversation, defendant HERNANDEZ asked an individual if the female was still causing him trouble, to which the individual replied no.

404. On April 19, 2015, using coded language in a telephone conversation, defendant RUBIO told defendant CABRERA not to call defendant MURIETTA anymore, noted that he (defendant RUBIO) had told others to cut her (defendant MURIETTA) off until she had turned things around, confirmed that defendant LOZA was a Mexican Mafia member as well as a good friend and businessman

who oversaw the area, and directed defendant CABRERA to apprise defendant RUBIO if anyone infringed upon defendant CABRERA's territory, as defendant RUBIO would address it since everyone listened to him and the Canta Ranas Organization.

405. On April 19, 2015, using coded language in a telephone conversation, defendant RUBIO instructed defendant DE LA PAZ to purchase methamphetamine from defendant CABRERA, and not to go anywhere else with defendant RUBIO's money.

406. On April 19, 2015, using coded language in a telephone conversation, defendant RUBIO informed defendant CABRERA that he would "co-sign" the drug debt which defendant DE LA PAZ owed defendant CABRERA, explaining that defendant DE LA PAZ would pay defendant RUBIO back because defendant DE LA PAZ knew not to cross defendant RUBIO.

407. On April 23, 2015, using coded language in a telephone conversation, defendant RUBIO instructed defendant DE LA PAZ to get two ounces of methamphetamine from defendant CABRERA and to give a firearm to an unindicted co-conspirator.

408. On April 24, 2015, using coded language in a telephone conversation, defendant DE LA PAZ told defendant RUBIO that an individual owed him money and that if he (defendant DE LA PAZ) did not make the effort to collect the money, it would make CR look weak; defendant DE LA PAZ told defendant RUBIO that to show he (defendant DE LA PAZ) was serious about the cause, defendant DE LA PAZ would get a firearm to threaten this individual.

409. On April 25, 2015, using coded language in a telephone conversation, defendant RUBIO instructed defendant DE LA PAZ to get an ounce of methamphetamine from defendant CABRERA.

410. On April 25, 2015, using coded language in a telephone conversation, defendant DE LA PAZ told defendant RUBIO that he was about to make a methamphetamine delivery, to which defendant RUBIO responded by directing defendant DE LA PAZ to get two ounces of methamphetamine from defendant CABRERA.

411. On April 26, 2015, using coded language on his Facebook account, defendant DE LA PAZ posted that he was selling methamphetamine out of the Double Tree Hotel in Norwalk, California.

412. On April 26, 2015, using coded language in a telephone conversation, defendant DE LA PAZ told defendant RUBIO that he needed more methamphetamine and that he had missed out on $200 worth of methamphetamine sales because defendant CABRERA was not answering his phone.

413. On April 26, 2015, using coded language in a telephone conversation, defendant RUBIO, while in custody, instructed defendant DE LA PAZ to obtain defendant RUBIO'S contacts from a cellular telephone so that defendant DE LA PAZ could reach out to those contacts to sell methamphetamine.

414. On April 26, 2015, using coded language in a telephone conversation, defendant DE LA PAZ told defendant RUBIO that he had obtained methamphetamine from a supplier named "Youngster," to which defendant RUBIO ordered defendant LA DE PLAZ to purchase an additional two ounces of methamphetamine from defendant CABRERA.

415. On April 27, 2015, using coded language in a telephone conversation, defendant RUBIO told defendant DE LA PAZ that he wanted an unindicted co-conspirator assaulted because he was not

84

1  providing a list of drug customers to defendant DE LA PAZ, as

2  defendant RUBIO had requested and defendant DE LA PAZ informed

3  defendant RUBIO that defendant CABRERA had given him one ounce

4  of methamphetamine and would be giving another ounce to him.

5      416. On April 28, 2015, using coded language in a telephone

6  conversation, defendant RUBIO instructed defendant DE LA PAZ to

7  bring a firearm and other CR gang members when DE LA PAZ went to

8  assault a rival gang member.

9      417. On April 29, 2015, using coded language in a telephone

10 conversation, defendant DE LA PAZ informed defendant RUBIO that

11 defendant CABRERA had given him one ounce of methamphetamine and

12 an unindicted co-conspirator had given him ten grams of

13 methamphetamine.

14     418. On April 30, 2015, defendant PEREZ possessed a loaded

15 International Armament model M68 .38 caliber revolver.

16     419. On May 2, 2015, using coded language in a telephone

17 conversation, defendant RUBIO told defendant CABRERA that he had

18 found him a new drug customer, and asked defendant CABRERA if he

19 had heard back from defendant DE LA PAZ, to whom he (defendant

20 RUBIO) had given ten extra grams of methamphetamine, and when

21 defendant CABRERA stated that he had not, defendant RUBIO told

22 defendant CABRERA that he would send defendant HERNANDEZ to deal

23 with defendant DE LA PAZ.

24     420. On May 3, 2015, using coded language in a telephone

25 conversation, defendant CABRERA, at defendant RUBIO's

26 instruction, conducted a three-way call in which defendant RUBIO

27 brokered a methamphetamine deal between defendant CABRERA and a

28 third-party.

421. On May 6, 2015, using coded language in a telephone conversation, defendant CABRERA told defendant RUBIO that defendant DE LA PAZ owed defendant CABRERA a $400 drug debt and would not return defendant CABRERA's text messages; defendant RUBIO instructed defendant CABRERA to tell defendant DE LA PAZ that defendant RUBIO was upset, and told defendant CABRERA that he would call defendant LOZA about defendant DE LA PAZ.

422. On May 24, 2015, using coded language in a telephone conversation, defendant RUBIO told defendant CABRERA that defendant MURIETTA would help defendant RUBIO pay his drug debt to defendant CABRERA.

423. On June 6, 2015, using coded language in a text message, defendant MURIETTA told an unindicted co-conspirator that she had $500 in tax payments which she was going to give to defendant LOZA.

424. On June 8, 2015, in Whittier, California, and in a vehicle in which he was a passenger, defendant DE LA PAZ possessed approximately 5.4 grams of methamphetamine.

425. On June 10, 2015, using coded language in a series of text messages, defendant MURIETTA agreed to sell a total of seven grams of methamphetamine.

426. On June 15, 2015, using coded language in a series of text messages, defendant MURIETTA agreed to supply methamphetamine to a third party.

427. On June 18, 2015, using coded language in a series of text messages, defendant CABRERA arranged to purchase one pound of methamphetamine for $3,350 and to sell it for $3,700.

428. On June 18, 2015, using coded language in a series of

86

1  text messages, defendant CABRERA arranged to purchase two ounces

2  of methamphetamine from an unindicted co-conspirator for $500.

3       429. On June 19, 2015, using coded language in a series of

4  text messages, defendant CABRERA arranged to purchase one ounce

5  of methamphetamine.

6       430. On June 23, 2015, at his residence, defendant CABRERA

7  possessed approximately 1.28 grams of methamphetamine, a

8  ballistic vest, two digital scales, drug paraphernalia, a credit

9  card skimmer, credit card profiles, numerous blank credit cards,

10 a Social Security card in the name of another person,

11 identification cards in the name of two other persons, and 61

12 gift cards.

13      431. On June 24, 2015, at his residence, defendant MARTINEZ

14 possessed approximately 519 grams of methamphetamine,

15 approximately 40.7 grams of a mixture and substance containing a

16 detectable amount of heroin, a digital scale, a Bersa model 85

17 .38 caliber handgun, a Springfield Model XD .45 caliber handgun,

18 313 rounds of Super X .22 caliber long rifle ammunition, 20

19 rounds of .45 caliber ammunition, and two postal money order

20 receipts which reflected a total of $400 in payments to Mexican

21 Mafia D.G.

22      432. On June 25, 2015, defendant HERNANDEZ possessed

23 approximately 12 grams of methamphetamine, a digital scale, a

24 Phoenix Arms Model Raven .25 caliber handgun with one round of

25 .25 caliber ammunition in the chamber, eight rounds of 9mm

26 ammunition, and two postal money order receipts which reflected

27 payments to Mexican Mafia D.G.

28

433. On July 11, 2015, using coded language in a telephone call, defendant MURIETTA told defendant RUBIO that she would cover defendant HERNANDEZ's tax payment for the month by paying defendant LOZA $400.

434. On July 17, 2015, using coded language in a series of text messages, defendant MURIETTA asked an individual for a credit card number and expiration date to commit fraud.

435. On July 24, 2015, using coded language in a telephone conversation, defendant MURIETTA told defendant RUBIO that she was at a store with an unindicted co-conspirator who was committing access device fraud.

436. Between July 24, 2015, and November 9, 2015, defendant ARIZMENDI deposited $285 into Mexican Mafia D.G.'s prison account.

437. On July 25, 2015, defendant MURIETTA drove defendant DE LA PAZ and an unindicted co-conspirator to stores in La Crescenta, California, for the purpose of committing access device fraud.

438. On August 4, 2015, using coded language in a telephone conversation, defendant ARIZMENDI acknowledged on a telephone call that gang members and drug dealers stop by her residence to drop off taxes owed to the Canta Ranas Organization.

439. On August 16, 2015, using coded language in a telephone conversation, defendant LOZA informed another Mexican Mafia member that, with Mexican Mafia D.G.'s backing, defendant LOZA had gained admission into the Mexican Mafia.

440. On August 29, 2015, and August 30, 2015, defendant ARIZMENDI visited Mexican Mafia D.G. at Pelican Bay State Prison

1  to discuss Canta Ranas Organization-related matters.

2      441. On August 30, 2015, in Norwalk, California, defendant

3  A. JAIMEZ and two other unindicted co-conspirators assaulted

4  victim L.H., while yelling "Canta Ranas," causing severe bodily

5  injury to victim L.H.

6      442. On September 5, 2015, and September 6, 2015, defendant

7  ARIZMENDI visited Mexican Mafia D.G. at Pelican Bay State Prison

8  to discuss Canta Ranas Organization-related matters.

9      443. On October 27, 2015, using coded language in a

10  telephone conversation, defendant ARIZMENDI stated that

11  defendant LOZA wanted her to visit Mexican Mafia D.G. at Pelican

12  Bay State Prison to apprise him that some gang members in the

13  street were disregarding defendant LOZA'S authority as both a

14  shotcaller of CR and as an EME member.

15      444. On November 1, 2015, in Canta Ranas Organization

16  territory, defendant A. SALINAS possessed a loaded Bersa .380

17  caliber semi-automatic firearm.

18      445. On November 4, 2015, using coded language in a

19  telephone conversation, defendant ARIZMENDI told an unindicted

20  co-conspirator that she had gained respect and opportunities due

21  to her affiliation with, and visits to, Mexican Mafia D.G.

22      446. On November 4, 2015, at his residence, defendant A.

23  SALINAS possessed a digital scale, three Green Dot MoneyPaks, a

24  pay/owe sheet documenting half-ounce to one-ounce sales of

25  heroin and methamphetamine, and CR gang paraphernalia.

26      447. On November 21, 2015, and November 22, 2015, defendant

27  ARIZMENDI visited Mexican Mafia D.G. at Pelican Bay State Prison

28  to discuss Canta Ranas Organization-related matters.